STATE of Utah, Plaintiff and Respondent,

v.

Douglas Edward KAY, Defendant and Appellant.

No. 20265.

Supreme Court of Utah.

March 7, 1986.

Rehearing Denied April 7, 1986.

R. Clayton Huntsman, Phillip Lang Foremaster, St. George, for defendant and appellant.

David L. Wilkinson, Earl J. Dorius, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Douglas Kay appeals from the trial court's refusal to adhere to the terms of a plea bargain. He pleaded guilty to three counts of capital homicide in exchange for a promise that he would be sentenced to life imprisonment rather than death. The trial court accepted the pleas without objection from the State. Two weeks later, following a change in the State's position, the court ruled that it was not bound by the agreement to impose life imprisonment. The court gave Kay the option of being sentenced, with the possibility of receiving the death sentence, or withdrawing his guilty pleas. Kay took an interlocutory appeal and seeks specific enforcement of the plea bargain. He alleges not only that principles of double jeopardy

preclude the court from setting the pleas aside and forcing him to begin the process anew, but also that the trial court's actions violated his constitutional right to due process. For reasons unique to the facts of this case, we find no constitutional infirmity in the trial court's setting aside the condition of the pleas. The case therefore is remanded. Kay may withdraw his pleas of guilty or he may proceed to sentencing.

This appeal presents several issues. The first is whether the Utah statute governing the sentencing of capital felons, U.C.A., 1953, § 76–3–207 (Repl.Vol. 8B, 1978, & Supp.1985), permits a defendant to plead guilty to a capital felony in exchange for a promise of life imprisonment. The second issue is whether a violation of Rule 11 of the Utah Rules of Criminal Procedure, U.C.A., 1953, § 77–35–11 (Repl.Vol. 8C, 1982, Supp.1985)—either because of the trial judge's participation in the plea process or because the plea was conditional in nature—requires the plea to be set aside. The third issue is whether the acceptance of a plea agreement that is subsequently broken places a defendant in jeopardy and precludes trial. Finally, we must determine what constraints due process places on the State when it seeks to breach a plea agreement.

We hold that neither the statute governing the sentencing of capital felons nor Rule 11 of the Utah Rules of Criminal Procedure prevented Kay from entering and the trial judge from accepting the conditional plea presented here. We hold that the trial judge did violate the procedural requirements of Rule 11 when he accepted Kay's unilateral plea, but find that the violation did not render the plea agreement invalid. We also hold that while Kay was placed in jeopardy within the meaning of the fifth amendment to the United States Constitution and article I, section 12 of the Utah Constitution, the trial judge was entitled to rescind his acceptance of the agreement under the circumstances of this case, and neither double jeopardy nor due pro-

cess considerations bar the State from proceeding to trial.

The facts leading up to this appeal are relatively simple. Kay is charged with three counts of first degree murder, all capital felonies, and four counts of aggravated robbery, all first degree felonies. These charges arose out of the execution-style shooting deaths of three people during the robbery of a bar in Cedar City, Utah, in February of 1984.[1] Kay was arraigned on April 17, 1984, and again on May 8th. A number of pretrial motions were presented throughout the summer. The trial was originally scheduled for August 13, 1984, but at the State's request, was continued until September 17th.

Three weeks before trial, defendant's counsel presented the court with an "In-Camera Motion for Conditional Plea of Guilty" in which Kay offered to plead guilty to all counts and to give his confession in open court in exchange for a promise by the judge that he would not be sentenced to death. Although the State had two days' notice that Kay intended to enter a conditional plea, it was unaware of the terms of the proposed plea until the motion was presented to the court.

The motion was presented to the court in chambers and was discussed at length off the record. The judge, defendant's counsel, the Iron County attorney, and a Utah assistant attorney general were all present. A one-hour recess was then called to allow the State to consider the matter and to allow defense counsel to consult with Kay. Following another brief *in camera* session with all counsel, proceedings were held on the record. The court questioned Kay at length about his understanding of both the plea agreement and its consequences and concluded that the pleas were knowingly and voluntarily given. Kay then pleaded guilty to each count of capital homicide "on the condition that [his] life not be forfeited," pleaded guilty to all four counts of aggravated robbery, and gave a full confession on the record, describing the rob-

1. Three other defendants were involved in the robbery. The State granted immunity to two of them in exchange for their testimony against Kay and the remaining defendant.

bery and the murders in detail. The trial judge accepted the pleas and scheduled a sentencing hearing for September 17, 1984. At no time did the prosecution object in open court to the pleas or to any other aspect of the proceedings.

Two weeks later, the State asked the trial court to reconsider its acceptance of the conditional pleas. This motion was made after a new lawyer appeared as lead counsel for the State, after the details of Kay's confession had been widely reported in the media, and after several public demonstrations in Cedar City had protested the agreement to sentence Kay to life imprisonment. One such incident involved parading an effigy of Kay crowned with the head of a dead pig through the town with a placard calling for the recall of the trial judge in the upcoming elections.

Following a lengthy hearing on the State's motion to reconsider, the trial judge entered an order vacating the promise of life imprisonment. He gave several reasons for his action. First, he found that the State had been surprised by the original motion for the conditional guilty plea, had disagreed with the plea agreement (despite its failure to object on the record), and had not had sufficient time to respond to Kay's request for a conditional plea. In addition, he found that the conditional plea was illegal and that accepting it would constitute plain error. The trial judge gave Kay the option of standing on the guilty pleas and facing a sentencing proceeding at which the death penalty might be imposed; withdrawing the guilty pleas, reinstating the not guilty pleas, and going to trial; or pursuing an interlocutory appeal. Kay chose the last alternative.

In this Court, Kay seeks specific enforcement of the plea agreement. Kay asserts that the trial court did not exceed its authority in accepting the pleas and that, in any event, the State's failure to timely object precludes it from challenging them now. He argues that the trial court's actions violated his constitutional right not to be placed twice in jeopardy, as well as his due process right to a fair, speedy, and public trial.

The State contends that the trial judge properly vacated the promise of life imprisonment because conditional and unilateral pleas are unlawful and therefore void under both the Utah Rules of Criminal Procedure and the death penalty statute. In response to Kay's constitutional arguments, the State asserts that because the conditional pleas were void, Kay was not placed in jeopardy. In addition, the State argues that because Kay acted improperly in offering the guilty pleas, he cannot now complain that the resulting publicity and delay deny him due process.

I

We first consider Utah's death penalty statute to determine whether it permits a trial judge to accept a guilty plea conditioned upon the judge's promise not to impose the death penalty. In capital cases, trials are bifurcated: the defendant's guilt or innocence is determined in the first phase, while the penalty of death or life imprisonment is determined in the second. U.C.A., 1953, §§ 76–3–206 and –207 (Repl. Vol. 8B, 1978, & Supp.1985).

This bifurcated scheme was adopted by Utah in 1973 in response to the United States Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *Furman* held that the death penalty was prohibited by the cruel and unusual punishment provisions of the eighth and fourteenth amendments to the United States Constitution when the decision to impose the penalty was left to the "uncontrolled discretion of judges or juries." 408 U.S. at 253, 92 S.Ct. at 2733 (Douglas, J., concurring). Following *Furman*, the Georgia legislature amended its death penalty statute, bifurcating the guilt and penalty phases and specifying detailed standards to guide the fact finder in deciding between death and life imprisonment in the penalty phase. The Supreme Court reviewed this amended statute and held that it was not *per se* unconstitutional. *Gregg v. Georgia*, 428 U.S.

153, 206–07, 96 S.Ct. 2909, 2940–41, 49 L.Ed.2d 859 (1976). The Georgia statute upheld in *Gregg* is essentially identical to Utah's death penalty statute, which we have also upheld against constitutional challenge. *State v. Pierre*, Utah, 572 P.2d 1338, 1345 (1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978).

As enacted in 1973, Utah's death penalty statute required a separate sentencing proceeding only for capital felons found guilty after trial. In 1983, however, the legislature amended the law to require a separate sentencing proceeding for those who plead guilty, as well as for those who are convicted by a judge or jury after trial. 1983 Utah Laws, ch. 19, § 1; U.C.A., 1953, § 76–3–207(1) (Repl.Vol. 8B, 1978, Supp. 1985). No legislative history exists to explain this change.

The language of the sentencing statute, section 76–3–207, provides as follows:

> (1) When a defendant has pled guilty to or been found guilty of a capital felony, there *shall* be further proceedings before the court or jury on the issue of sentence. . . .
>
> (2) In these sentencing proceedings, evidence *may* be presented as to any matter the court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition, and any other facts in aggravation or mitigation of the penalty.
>
> . . . .
>
> (3) [Thereafter, t]he court or jury, as the case may be, *shall* retire to consider the penalty. . . .

U.C.A., 1953, § 76–3–207(1), (2), and (3) (Repl.Vol. 8B, 1978, Supp.1985) (emphasis added). Arguably, this mandate of a hearing requiring consideration of the evidence to determine the proper sentence is meaningless if the judge can bind himself in advance to impose a particular sentence. Therefore, the State argues, we should construe the statute to preclude the judge

from accepting any plea that would limit his discretion in the sentencing proceeding. This argument is without merit.

■ The bifurcated sentencing procedure was instituted to insure that if a defendant is found guilty and then sentenced to death, the sentence will withstand scrutiny under both the state and federal constitutions. *See generally Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The statute's aim was to eliminate the arbitrariness of the decision to impose death. It did this by requiring the court or the jury to carefully weigh specific aggravating and mitigating circumstances before deciding upon the appropriate sentence. *Id.* We can infer that the legislature requires the bifurcated proceeding for those who plead guilty to capital crimes in order to assure that if the death sentence is imposed, it is no more arbitrary than a death sentence imposed after a full trial.

■ Arguably, allowing the judge to agree to forego the death penalty without first considering the kind of detailed information normally presented at a sentencing proceeding renders the sentencing scheme unconstitutionally arbitrary. This argument is not persuasive. Some discretion is always present in the operation of a death penalty statute. The prosecution always has discretion to decide whom to charge with a capital felony. It may also bargain that charge down to a lesser offense, even after the charge is filed. Similarly, under our sentencing statute, nothing prevents a prosecutor from refusing to put on evidence of aggravating circumstances, thus effectively insuring that a defendant will not receive the death penalty.[2] U.C.A., 1953, § 76–3–207(2) (Repl.Vol. 8B, 1978, Supp.1985).

■ Under these circumstances, permitting the trial judge to accept a guilty plea conditioned upon an agreement not to impose the death penalty does not significantly increase the potential for arbitrariness in administering the death sentence. It does

---

**2.** In some states, prosecutors are statutorily required to introduce evidence of aggravating cir-

cumstances. *See, e.g.,* N.J.S.A. 2C:11–3(d)(1982 ed.).

not therefore raise questions of a constitutional magnitude under *Furman v. Georgia, supra.* Although a sentencing hearing must be held, nothing in the sentencing statute precludes the trial court from agreeing in advance, under the terms of a proper plea agreement, to impose a particular sentence. In light of these considerations, we find that the statute provides no basis for upholding the trial court's subsequent withdrawal from the agreement.

## II

■ The State next argues that the trial court's failure to comply with Rule 11 of the Utah Rules of Criminal Procedure renders Kay's bargain invalid. U.C.A., 1953, § 77–35–11 (Repl.Vol. 8C, 1982, Supp. 1985). Our Rule 11 is closely patterned after Rule 11 of the Federal Rules of Criminal Procedure as that rule existed when the Utah rules were first formulated. The primary purpose of the federal rule and, we must assume, the comparable state rule, is to insure that when a defendant enters a guilty plea and thereby waives important constitutional rights, such as the right to a jury trial, he or she acts freely and voluntarily, with full knowledge of the consequences of the plea. *E.g., McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). To this end, subpart (a) of Utah's Rule 11 provides that a defendant shall be represented by counsel before a plea is taken, unless counsel is waived, and subparts (b), (c), and (e) describe in detail the procedures for taking pleas of guilty or no contest.

■ A second purpose of Rule 11, aimed at preserving the integrity of the judicial process, is to insure that the record reflects that the plea was properly taken, *i.e.,* that the judge correctly determined the terms of the plea agreement and whether the plea was voluntary. *See, e.g., United States v. Roberts,* 570 F.2d 999 (D.C. Cir.1977). Thus, the rule delineates proper standards of conduct for trial courts in connection with plea bargaining, requiring them to determine whether a plea agreement has been reached between the defendant and the prosecution and, if so, the details of that agreement. U.C.A., 1953, § 77–35–11(e)(6) (Repl.Vol. 8C, 1982, Supp.1985). In addition, the court must inform the defendant that it is not bound by the prosecutor's agreement to request or recommend a specific sentence. *Id.* Finally, Rule 11 bars the trial court's participation in plea discussions "prior to any agreement being made by the prosecuting attorney." The rule provides, however, that after such an agreement is reached, the plea may be disclosed to the court, which may then indicate to both parties whether the proposed disposition will be approved. U.C.A., 1953, § 77–35–11(f) (Repl.Vol. 8C, 1982, Supp. 1985). That portion of the rule also provides that if the trial court thereafter decides not to adhere to the terms of the agreement, it shall so advise the defendant and allow the defendant to either affirm or withdraw the plea.[3] These provisions governing the trial court's conduct attempt to insure that the trial court will not improperly participate in the plea negotiations, the possible consequence of such participation being to render the plea involuntary and subject to subsequent attack. *United States v. Gilligan,* 256 F.Supp. 244, 253 (S.D.N.Y.1966). Such participation may also undermine the judge's proper function as a neutral arbiter and transform him into

**3.** This provision in the Utah rules differs from Rule 11 of the Federal Rules of Criminal Procedure in that the Utah rule suggests that the trial court can withdraw from the plea agreement even after a guilty plea has been formally accepted and entered on the record. The federal rule, on the other hand, permits a court to accept or reject a plea that is conditioned upon an agreement as to a particular sentence. Fed. R.Crim.P. 11(e)(3). If the court rejects the agreement, it must allow the defendant to withdraw the plea; if it accepts the agreement, it is generally bound to adhere to the terms of the agreement. *United States v. Blackwell,* 694 F.2d 1325, 1339 (D.C. Cir.1982). The federal rule does not allow a judge *carte blanche* authority to renege on a plea agreement after the agreement has been accepted. *Id.* This power, apparently granted by the Utah rule, to withdraw from a plea agreement at any time should not be taken literally. In appropriate circumstances, due process and double jeopardy considerations will prohibit the judge from reneging on the agreement. *See* discussion in part III *infra.*

an advocate for whatever proposed resolution the judge favors. *United States v. Werker,* 535 F.2d 198, 203 (2d Cir.1976), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976).

Understanding these general principles is useful in evaluating the State's contention that the trial court's violation of Rule 11 renders Kay's plea invalid. The State argues that the trial court violated Rule 11 in two particulars. First, the State contends that because Rule 11 expressly allows a defendant only to enter a plea of "not guilty, guilty or no contest," U.C.A., 1953, § 75–35–11(b) (Repl.Vol. 8C, 1982, Supp. 1985), by implication the rule does not permit the entry of a conditional guilty plea. Second, the State argues that the trial court participated in the plea agreement, contrary to the prohibitions against such conduct in Rule 11(f). The State asserts that both errors either require this Court to declare the guilty pleas a nullity or allow the trial court to proceed with sentencing without regard to the plea agreement.

 We first address the State's argument that Rule 11 prohibited the trial court from accepting a guilty plea conditioned upon an agreement not to impose the death penalty. Assuming *arguendo* that the State acquiesced in the plea agreement,[4] nothing in the specific language of the rule prohibits a court from accepting or rejecting a plea agreement that asks the court to commit itself in advance to imposing a sentence lawfully within its power.[5] On the other hand, Utah's Rule 11 does not explicitly permit a judge to accept a guilty plea conditioned upon the imposition of an agreed-upon sentence. It is one thing to

say that Rule 11 may not contemplate the trial court's acceptance of a guilty plea conditioned upon a promise to impose a given sentence, or that such a practice is unwise as a general policy, and an entirely different thing to say that Utah's Rule 11 positively forbids it in all situations and that any resulting plea is void.

Some cases under the old version of federal Rule 11 held that the rule flatly prohibited a trial court from accepting a plea when the court made its intention respecting sentencing clear prior to acceptance of the plea. *See, e.g., United States v. Adams,* 634 F.2d 830, 836 (5th Cir.1981); *United States v. Werker, supra,* 535 F.2d at 201. In these cases, however, the courts did not determine whether such a plea was automatically a nullity.[6] Conversely, some courts held that the acceptance of a guilty plea conditioned upon an agreement to impose a particular sentence did not render the plea invalid. *See Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *United States v. Blackwell,* 694 F.2d 1325 (D.C. Cir.1982); *Toler v. Wyrick,* 563 F.2d 372, 374–75 (8th Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1455, 55 L.Ed.2d 498 (1978). The current version of Rule 11 in the Federal Rules of Criminal Procedure, which superseded the rule upon which Utah's Rule 11 is modeled, now explicitly recognizes that a court may entertain a plea bargain conditioned upon an agreement to impose a particular sentence, although the court retains the discretion to refuse to accept such a plea. Fed.R.Crim.P. 11(e)(2), 18 U.S.C. (1983). The *American Bar Association Standards for Criminal Justice,* discussing a judge's responsibilities when accept-

---

**4.** There is nothing in the record compiled before the trial court indicating that the State did not agree to the plea agreement. *See* discussion in part III *infra.*

**5.** In fact, subpart (e)(6), which requires the judge to inform the defendant that the judge is not bound by any recommendations of the prosecutor as to sentence, implicitly recognizes that the judge must be able to exercise broad discretion in sentencing. Although subpart (e)(6) insures that the prosecutor cannot limit the trial judge's authority in sentencing, it does not pro-

hibit the judge from independently exercising his discretion to commit himself to imposing a particular sentence as a condition of a plea agreement.

**6.** In *Adams,* the defendant had withdrawn his plea and proceeded to trial. The appeals court held that he was entitled to be sentenced by another judge. In *Werker,* the state obtained, upon proper objection and appeal, a writ of mandamus to prohibit disclosure of the sentence to the defendant.

ing a guilty plea, recognizes that it may be both permissible and desirable for a judge to disclose a proposed sentence as part of the plea-bargaining process, so long as the judge acts as a moderator and not as an advocate. III *ABA Standards for Criminal Justice* § 14–3.3, at 84–85 (2d ed.1980).

▮▮▮▮ Utah's Rule 11 provides no such specific guidance. Under the circumstances of this case, however, we cannot find that the acceptance of the conditional plea was improper. The policy considerations that have led some courts to hold in specific factual settings that it is improper for a judge to agree to impose a given sentence in exchange for the entry of a guilty plea are not present in this case. The record before us leaves no question that Kay's pleas were voluntary. Kay vigorously argues that the pleas were freely and knowingly given in an effort to avoid the death penalty. The mere fact that Kay pleaded guilty to avoid a harsher penalty does not render an otherwise valid plea involuntary. *E.g., Brady v. United States,* 397 U.S. 742, 749–50, 90 S.Ct. 1463, 1469–70, 25 L.Ed.2d 747 (1970). As noted above, nothing in our Rule 11 explicitly prohibits the acceptance of such a conditional plea, and we decline to read such a limiting provision into the rule.

We turn to the State's second contention regarding Rule 11. It argues that the trial court's participation in the plea discussions rendered the pleas invalid, particularly where, as it contends occurred here, the trial court negotiated with Kay over the State's objection. Rule 11 specifically provides that "[t]he judge shall not participate in plea discussions prior to any agreement being made by the prosecuting attorney...." U.C.A., 1953, § 77–35–11(f) (Repl.Vol. 8C, 1982, Supp.1985). The corresponding federal rule has always contained a similar provision. Fed.R.Crim.P. 11(e)(1), 18 U.S.C. (1983).

▮▮▮▮ As we previously noted, the trial court's participation in plea negotiations is not to be encouraged; there is a very real danger that a trial court's participation will have a coercive effect upon a defendant. Certainly, a trial court's unilateral participation in a plea negotiation over a prosecutor's objection is highly improper. Despite the State's assertions to the contrary, however, there is no substantial record evidence that this occurred here. While Kay presented his agreement unilaterally to the judge, the State's attorneys were present during all discussions on the plea. Nothing in the record suggests that the State did not acquiesce in the agreement, nor does any record evidence suggest that the judge's actions coerced Kay into reluctantly entering the guilty pleas. For these reasons, we cannot hold that this violation of Rule 11 requires that the plea be declared a nullity.

▮▮▮ A final word on the State's Rule 11 arguments. In its zeal to set aside Kay's guilty pleas or renege on the bargain that was struck, the State has argued, in effect, that otherwise voluntary and lawful guilty pleas should always be voided when the trial court violates any provision of Rule 11. The concurring opinions of Chief Justice Hall and Justice Howe adopt this reasoning as well. This position is shortsighted, for to follow it would be to sanction a remedy far worse than the wrong. If we were to hold that any violation of Rule 11 automatically voids the resultant plea, even when the plea is knowingly and voluntarily entered, we would encourage defendants, convicted and sentenced after such a plea, to attack their convictions for purely tactical reasons, either by direct appeal or by seeking habeas corpus long after the fact.[7] We have refused to overturn convictions upon such challenges in the past, *e.g., State v. Knowles,* Utah, 709 P.2d 311 (1985); *State v. Morris,* Utah, 709 P.2d 310 (1985), and we find no reason to encourage such attacks in the future.

**7.** No data is available for Utah specifically, but studies indicate that despite the proscriptions contained in the federal rules and in most state rules, judicial involvement in plea bargaining is widespread. III ABA Standards for Criminal Justice § 14–3.3, at 84 (2d ed.1980). Thus, the potential for such attacks is substantial.

Overturning such convictions—which we would have to do if we embraced the rationale advanced by the State and the Chief Justice's concurring opinion—would require the State to reprosecute numerous defendants, probably long after the challenged guilty pleas were entered and when the passage of time would make reprosecution impractical, if not impossible. Almost certainly, the ultimate result would be to free a number of convicted persons for nothing more than technical errors in the acceptance of their voluntary guilty pleas.

Having concluded that violations of Rule 11 do not automatically invalidate Kay's guilty pleas, the question arises as to the consequences of Rule 11 violations. Rule 30 of Utah's Rules of Criminal Procedure, U.C.A., 1953, § 77–35–30(a) (Repl.Vol. 8C, 1982), reflects our "harmless error" rule, and we find it applicable to situations involving violations of Rule 11.[8] Accordingly, a Rule 11 error will not invalidate the plea taken unless the error results in a substantial violation of a party's rights. In the present case, we find no error that affects the substantial rights of a party and, as to which, an objection was timely raised. The State certainly had ample grounds for raising objections at the time the plea was taken; however, it waived those objections by its failure to raise them at the time the pleas were accepted. Therefore, the Rule 11 violations cannot be a basis for our invalidating the pleas.

### III

We next turn to Kay's arguments concerning his rights under a broken plea agreement. Kay first contends that any attempt to try him or sentence him without respecting the terms of the plea agreement will violate his rights under the state and federal constitutions not to be placed twice in jeopardy. Kay relies on the almost universal recognition that jeopardy attaches when a court accepts a guilty plea, *see, e.g., Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883); *United States v. Cruz*, 709 F.2d 111, 113 (1st Cir.1983), and that the entry of the plea, rather than the actual imposition of the sentence, is the critical moment for determining jeopardy. *See Annot*, 75 A.L.R.2d 683; *Stowers v. State*, 266 Ind. 403, 363 N.E.2d 978, 982 (1977).

The State, in responding to this claim, relies on cases that have assumed, without directly addressing the question, that the State's failure to adhere to a plea bargain does not raise double jeopardy problems because the State's noncompliance simply renders the plea void *ab initio*. The apparent reasoning of these cases is that a plea agreement based upon a promise which is later broken has been coerced and is therefore void. *See, e.g., Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (Douglas, J., concurring); *cf. Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962). Since jeopardy does not attach when a plea is void, these cases reason that the defendant may be tried without running afoul of the constitutional prohibitions against double jeopardy. The ALI's Model Code of Pre-Arraignment Procedures § 350–6 and the Uniform Rules of Criminal Procedure § 444(e)(2)(iii) make the same analytic assumption.

That analysis, however, is not entirely satisfactory. In an attempt to avoid free-

---

**8.** In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court suggested that any violation of federal Rule 11 rendered a guilty plea void. *Id.* at 471–72, 89 S.Ct. at 1173–74. The rule was thereafter amended to provide that variations from the procedures outlined in the rule should be disregarded unless the variation affected a defendant's substantial rights. Rule 11(h); 18 U.S.C.A. (Supp.1985). The notes of the Advisory Committee on the Rules of Criminal Procedure state that subsection (h) was added to clarify the fact that the harmless error provision of Rule 52(a) applied to Rule 11 violations. We see no reason why the harmless error concept should not also apply to Utah's analogue to federal Rule 11. A party is no more entitled to a perfect plea proceeding than he is to a perfect trial. *See Warner v. Morris*, Utah, 709 P.2d 309 (1985) (failure to follow letter of Rule 11 does not render plea void).

ing defendants who plead guilty whenever the prosecutor or a judge later refuses to comply with the terms of the plea agreement, these courts have resorted to the fiction that the plea never occurred—that it is "void *ab initio*." Yet at the time the plea was taken, it certainly may have been knowing and voluntary, and under accepted doctrine, nothing more is required to make jeopardy attach at the time the plea is entered. This approach also has practical flaws. While it permits a defendant to be retried, it places no constraints on the power of the State or the court to break a plea agreement with impunity. For that reason, the courts have had to resort to notions of fundamental fairness under the due process clause to construct some necessary protections for the defendants' legitimate interests. *See* part IV, *infra.*

The analytical and practical problems posed by the void *ab initio* approach have led some courts to reject it. *See, e.g., United States v. Williams*, 534 F.2d 119, 121 (8th Cir.1976), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Cruz*, 709 F.2d 111, 113 (1st Cir. 1983); *United States v. Holman*, 728 F.2d 809 (6th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984); *Myers v. Frazier*, W.Va., 319 S.E.2d 782 (1984); *cf. People v. Tourtellotte*, 88 Wash.2d 579, 564 P.2d 799 (1977). Because the entry of a plea constitutes a waiver by the defendant of a number of important constitutional rights, a trial court may not simply disregard a plea agreement unless the defendant knowingly waives his right to be free from jeopardy through a voluntary withdrawal of the plea. *See, e.g., Stowers v. State, supra*, 363 N.E.2d at 982–83.

In view of the conflict among the lower federal courts, the disparate state court positions, and the absence of a clear ruling by the United States Supreme Court, we do not feel compelled to adopt the strained void *ab initio* analysis. Rather, we are persuaded by the First Circuit's reasoning in *United States v. Cruz, supra.* In *Cruz*, the trial court unconditionally accepted a defendant's guilty plea to a lesser charge, but later rejected the plea based upon information it later received in the presentence report. On appeal, the defendant argued that the trial court's rejection of the plea agreement and order that he stand trial placed him twice in jeopardy. The First Circuit considered the void *ab initio* analysis and rejected it. It also considered the possibility of finding that jeopardy did not attach until the sentence was pronounced, but rejected that alternative analysis for policy reasons. Finally, it settled on what we deem to be the most satisfactory analysis. The court recognized that jeopardy attaches at the time the guilty plea is accepted. However, it reasoned that nothing inherent in the double jeopardy clause analysis forbids the trial court from setting aside the plea and forcing the defendant to trial under appropriate circumstances. The *Cruz* court noted that although jeopardy attaches when a jury is impaneled, if thereafter a mistrial is properly declared, a defendant may still be retried without violating double jeopardy. By a parallel of reasoning, the court concluded that double jeopardy ought not bar trial of a defendant if a guilty plea is set aside for sufficient reasons. Accordingly, the court stated:

> [J]eopardy attaches upon acceptance of the guilty plea, but [the constitution] allow[s] the trial court to rescind its acceptance at any time before sentencing and judgment upon a showing of "manifest necessity"—the standard for declaring a mistrial over the defendant's objection.

709 F.2d at 114.[9]

We consider the *Cruz* court's approach to double jeopardy to be sound and not so

---

**9.** The First Circuit speculated that a weaker standard than "manifest necessity" might be appropriate where a plea was set aside, rather than a trial aborted, because double jeopardy considerations are "less implicated" when deal-

ing with guilty pleas rather than full-scale trials. However, the court did not have to consider this issue in depth because it based its decision to reinstate the plea on the lower court's direct

subject to *ad hoc* manipulations as the void *ab initio* analysis that fictionalizes coercion from the fact of a breached promise. Furthermore, it does not require subsequent resort to due process analysis to protect the legitimate interests of a defendant against capricious action by the court or the prosecution in refusing to abide by plea agreements. *Cruz* acknowledges that plea agreements are binding on the parties and the court once the plea is entered and accepted. If the court or the prosecutor refuses to comply with the terms of the plea thereafter, the defendant may choose to withdraw the plea. The trial court may not refuse to comply with the terms of the accepted agreement unless circumstances justify the declaration of a misplea;[10] otherwise, the double jeopardy clause will preclude subsequent trial of that defendant. This means, in practice, that once the court or prosecution has entered into a plea agreement and that plea has been accepted and entered, neither one may unilaterally withdraw from the agreement without a showing that facts analogous to those warranting a mistrial exist (at least in the absence of a breach of the agreement by the defendant). This practical constraint should be sufficient to protect against capricious action by the State. At the same time, by permitting the declaration of a misplea under appropriate circumstances, the legitimate interest of the public in assuring that criminal prosecutions are not frustrated by a clumsy application of the

double jeopardy clause is protected. We therefore choose to employ the *Cruz* analysis in considering Kay's federal double jeopardy claim.

The *Cruz* analysis also seems appropriate in applying the double jeopardy prohibition under article I, section 12 of the Utah Constitution. There is no Utah case law discussing when jeopardy attaches as a result of a guilty plea, nor is there any law as to when guilty pleas may be set aside without barring retrial; yet these questions are appropriately answered by *Cruz*. Therefore, we apply the analysis used in *Cruz* in considering Kay's claims under article I, section 12 of the Utah Constitution, as well as under the fifth amendment to the United States Constitution.

*Cruz* does not deal in depth with the standard that should be met to justify setting aside a guilty plea and permitting subsequent trial of a defendant. Thus, we must determine when the "manifest necessity" standard used in the federal courts or the "legal necessity" standard used in the Utah courts to determine when a trial judge may properly declare a mistrial over a defendant's objection should be applied to situations involving guilty pleas.[11]

It is generally accepted that a trial court may properly declare a mistrial upon its own motion and over a defendant's objection when an error occurs which will obviously compel reversal if the case is appeal-

---

violation of the federal rule in its use of the information in the presentence report.

**10.** We recognize that Utah's Rule 11 provides that "if the judge [after accepting a plea] decides that final disposition should not be handled in conformity with the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw the plea." It may be contended that this provision gives a trial judge *carte blanche* to withdraw from a plea bargain at any time. However, it is elementary that neither rule nor statute may override a defendant's constitutional right not to be placed twice in jeopardy. If a court attempted to withdraw from a plea agreement over a defendant's objection and in the absence of circumstances warranting a misplea, constitutional prohibitions against double jeopardy would preclude his further prosecution.

**11.** The Utah cases have referred to a "legal" or "special" necessity for granting a mistrial over a defendant's objection, rather than a "manifest" necessity—the phraseology used in the federal courts. Our examination of the cases reveals no substantial differences between state and federal courts in the standards for granting a mistrial. *Compare United States v. Perez,* 9 Wheat. 579, 580, 22 U.S. 579, 6 L.Ed. 165 (1824); *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1970); *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978), *with State v. Thompson,* 58 Utah 291, 199 P. 161 (1921); *State v. Whitman,* 93 Utah 2d 557, 74 P.2d 696 (1973); *State v. Ambrose,* Utah, 598 P.2d 354, 358–59 (1979); *McNair v. Hayward,* Utah, 666 P.2d 321, 324 (1983).

ed, thus making further proceedings futile. *See, e.g., Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *State v. Whitman,* 93 Utah 2d 557, 74 P.2d 696 (1973); *State v. Ambrose,* Utah, 598 P.2d 354 (1979). Some courts, in determining whether a mistrial should be granted, have used a balancing test: the potential prejudice to the defendant from granting the mistrial and denying him his "valued right to have his trial completed by a particular tribunal" is weighed against "the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 690, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), *reh'g denied,* 337 U.S. 921 (1949); *State v. Ambrose, supra.* This is to guard against the prosecution's inviting a mistrial by committing reversible error when it thinks that the case is going poorly and would prefer to try again before a new finder of fact. *See, e.g., United States v. Jorn,* 400 U.S. 470, 484–85, 91 S.Ct. 547, 556–57, 27 L.Ed.2d 543 (1971); *State v. Ambrose, supra.*

The granting of a misplea should be measured by a similar standard. It is true, as the *Cruz* court noted, that double jeopardy considerations are not as heavily implicated in a plea bargain as in a trial setting. 709 F.2d at 114. Nonetheless, in light of the double jeopardy problems, considerations of fundamental fairness permeate the cases involving mistrials. Those considerations are equally applicable to plea bargains. This is best illustrated by the fact that although the courts have erected few obstacles to the abrogation of plea bargains under the double jeopardy clause, they have resorted to the due process clause to accomplish the same end. *See Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *United States v. Mack,* 655 F.2d 843 (8th Cir.1981); *United States v. Mercer,* 691 F.2d 343 (7th Cir.1982); *Stowers v. State, supra,* 363 N.E.2d at 983. Therefore, it seems plain that a misplea can properly be granted where obvious reversible error has been committed in connection with the terms or the acceptance of the plea agreement and no undue prejudice to the defendant is apparent. Declaration of a misplea also seems reasonable in situations where some fraud or deception by one party leads to the acceptance of the plea agreement by the other party or the court. There may be other circumstances where the balancing of the interests and legitimate expectations of the defendant and the public will also warrant a misplea, but we need not reach that question today.

Applying the foregoing standard, we do not find that the trial court abused its discretion in declaring a misplea and ordering Kay either to face sentencing or to withdraw his plea of guilty. The trial court found that the conditional plea was illegal. As indicated earlier in this opinion, it was mistaken on this point. However, Rule 11 certainly was violated, and had the prosecution timely objected, those violations would have been grounds to set the plea aside. The trial court also found that the State had been surprised by the proposed plea and had disagreed with it. There is little record support for that finding because most of the conversation relating to the plea was held off the record. However, the trial judge is certainly in a better position than we to know whether the prosecution disagreed with the proposed agreement. In light of these findings and the circumstances discussed below, we conclude that the errors committed by all parties provided ample support for the trial court's finding of the misplea.

A brief factual review is warranted. Defendant's counsel initiated the series of errors when he proposed a plea bargain to the trial court without having first obtained the State's consent. Under Rule 11, the plea should not have been tendered to the judge unless the State had previously agreed to its terms. On the record before us, there is no evidence that the prosecutor at any time expressly agreed to the terms of the plea, much less that he agreed to the plea prior to its presentation to the judge.

The trial court also erred by entertaining the plea. After the motion to enter a plea

was presented to it, and before proceeding with the *in camera* hearing, the court should have ascertained whether the prosecutor had agreed to the proposed plea. If it determined that the prosecutor had not agreed in advance, the court should have terminated the hearing and any further consideration of the plea.

The problems created by defense counsel and the trial court were compounded by the prosecution. A timely objection by the State would have prompted the judge to stop the proceedings and would have obviated the resulting problems. In the very unlikely event that the judge refused to halt the proceeding, the State could have asked for a recess, contacted any member of this Court, and obtained a temporary stay of the plea proceeding pending procurement of a writ of prohibition. *See United States v. Werker, supra,* 535 F.2d at 201. The prosecution took none of the steps described. In fact, despite its current protestations, its actions at the time of the plea and confession suggest that it may have acquiesced in the plea bargain, although the trial judge seems to have expressly found to the contrary.[12] In any event, the prosecution's vacillating performance does not change our conclusion that the trial court did not abuse its discretion in declaring a "misplea" and setting the plea agreement aside.

### IV

Finally, we consider Kay's contention that considerations of fundamental fairness embodied in the due process clause of amendment XIV of the United States Constitution and article I, section 12 of the Utah Constitution require specific enforcement of the plea. He argues that he acted in reliance on the promise that he would not be sentenced to death if he entered a guilty plea and gave a full confession. The confession was given, and although it would not be admissible at a subsequent trial, it has provided the prosecution with a road map if he should now be forced to go to trial. He contends that to require him to go to trial under such circumstances would be manifestly unfair, especially since he was induced to give the confession by the court's broken promise.

In *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), the Supreme Court expressly recognized that, as a matter of due process, a defendant who pleads guilty has a constitutional right to a remedy when that agreement is broken. However, the Court refused to decide whether the appropriate remedy should be withdrawal of the plea or specific enforcement, leaving that question for the state court to resolve based on the facts of the case. *Id.* Since *Santobello,* numerous state and federal courts have considered the appropriate remedy for a broken plea bargain. When a defendant has taken steps in reliance on a plea bargain that may prejudice him at a subsequent trial, many courts have granted specific enforcement of the plea agreement. *See, e.g., Santobello v. New York, supra; United States v. Mack,* 655 F.2d 843 (8th Cir.1981); *United States v. Mercer,* 691 F.2d 343 (7th Cir.1982); *United States v. Blackwell, supra,* 694 F.2d at 1337; *Phillips v. United States,* 679 F.2d 192 (9th Cir.1982); *United States v. Cruz,* 709 F.2d 111 (1st Cir.1983); *Stowers v. State, supra,* 393 N.E.2d at 983. We choose not to follow that route.

As noted earlier, the *Cruz* double jeopardy analysis can take adequate cognizance

---

12. While Kay tendered his motion for acceptance of the pleas unilaterally, the motion was discussed with the court and the State in chambers for over an hour. A recess was called, another short *in camera* proceeding was held with all counsel present, and proceedings were then held on the record. The State failed to object at any time during the record proceedings, despite the trial court's repeated inquiries to the State's counsel. The inference that can be drawn from this record, and from the State's subsequently raising the issue only after a new lead counsel's appearance and after defendant's open court confession had thoroughly inflamed the public, is that the State initially acquiesced in the plea agreement. Although the trial court found that the State was surprised by the conditional plea and did not agree to it, we are deeply troubled by the prosecution's conduct.

of the fundamental fairness concerns that are ordinarily brought into play under the due process clause in connection with broken plea agreements. Those considerations were taken into account in our conclusion that the grant of the misplea was not an abuse of discretion. There is no reason to reach a different conclusion under the due process clause of either the state or the federal constitution. It is true that Kay confessed because of the plea agreement. However, that confession certainly cannot be used at a subsequent trial since he was misled into giving it. *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). This places Kay in no different position than any other defendant who gives a confession that is later found not to have been knowing and voluntary. The confession is excluded, but nothing precludes trial of the defendant. The judge at a subsequent trial must assure that the prosecution makes no use of the confession or any evidence derived from it. But the speculative value of a "road map" is not enough to preclude prosecution.

It must be borne in mind that Kay proposed the plea and the terms under which it was given. In doing so, he acted in violation of Rule 11 and generated a number of the ensuing problems. It would be anomolous to hold that because he and his counsel were able to draw the court and the prosecution into a proceeding in violation of Rule 11, he is constitutionally entitled to the benefit of his bargain.

We have considered Kay's other contentions on appeal and find them to be without merit.

The case is remanded. Kay may either withdraw the guilty pleas that were given as part of the aborted plea agreement and enter new pleas or he may choose to stand on his guilty pleas and proceed to sentencing under the provisions of section 76–3–207 with no guarantee as to sentence.

DURHAM, J., concurs.

1. U.C.A., 1953, § 77–35–11 (1982 ed.).

HALL, Chief Justice (concurring in the result):

I join the Court in affirming the order of the trial court which vacated the condition imposed by the pleas of guilty. However, I do not join the Court in its interpretation of the scope of judicial participation in plea bargaining.

Judicial participation in plea bargaining is expressly prohibited by Rule 11(f), Utah R.Crim.P.,[1] which reads in pertinent part as follows:

(f) *The judge shall not participate* in plea discussions prior to any agreement being made by the prosecuting attorney, but once a tentative plea agreement has been reached which contemplates entry of a plea in the expectation that other charges will be dropped or dismissed, the judge, upon request of the parties, *may permit the disclosure to him of such tentative agreement* and the reasons therefor in advance of the time for tender of the plea. The judge may then indicate to the prosecuting attorney and defense counsel whether he will approve the proposed disposition. Thereafter, if the judge decides that final disposition should not be handled in conformity with the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea.

(Emphasis added.)

The foregoing statute does not encompass or contemplate a role-change on the part of the judge. On the contrary, the statute precludes the judge from becoming a plea bargainer, a role wholly inconsistent and in conflict with the role exclusively reserved to one who must sit in judgment. This concept of the role the judge must play is further borne out by subsection (e)(6) of Rule 11. That rule provides that if recommendations as to sentence are allowed by the court, the court shall advise the defendant personally that any recommendation as to sentence is not binding on the court.

Utah's Rule 11 is patterned after Rule 11, Fed.R.Crim.P., which has similarly been interpreted as prohibiting judicial participation in plea bargaining. In *United States v. Werker,*[2] the court had this to say about the role of the judge in plea bargaining:

> Rule 11 implicitly recognizes that participation in the plea bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant.
>
> . . . .
>
> ... The Rule is based on the sound principle that the interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any question or suspicion when it becomes his duty to impose sentence.[3]

In *State v. Jordan,*[4] the Arizona Supreme Court observed that under its rule[5] the "court shall not participate" in plea negotiations. The court said that the sound reason for the rule was that set forth in *Werker:* that a judge who participates in plea bargaining is thereby deprived of judicial status and can no longer perform as a neutral arbiter.

U.C.A., 1953, § 76–3–206 provides that one "convicted of a capital felony shall be sentenced in accordance with section 76–3–207, and sentence shall be death or life imprisonment as the court or jury, in accordance with this section, shall determine."

Predicated upon the rule that prohibits judicial participation in plea bargaining, U.C.A., 1953, § 76–3–207(1) (Supp.1985) *mandates* that a "sentencing proceeding" follow the entry of a plea of guilty or conviction of a capital felony. That section reads in pertinent part as follows:

> (1) When a defendant has pled guilty to or been found guilty of a capital felony, *there shall be further proceedings before the court or jury on the issue of sentence.* In the case of a plea of guilty to a capital felony, the sentencing proceedings shall be conducted by the court which accepted the plea or by a jury upon request of the defendant....
>
> (2) In these sentencing proceedings, evidence may be presented as to any matter the court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition, and any other facts in aggravation or mitigation of the penalty.

(Emphasis added.)

It does not lie within the prerogative of the court to disregard the mandate of a sentencing hearing. The court is required to consider the evidence to determine whether the penalty to be imposed is that of death or life imprisonment. Furthermore, agreeing to be bound to impose a life sentence in advance of a sentencing hearing constitutes prejudgment of the issue of sentencing. It is an arbitrary and injudicious act which violates the holding in *Furman v. Georgia*[6] that the decision to impose the death penalty shall not be left to the uncontrolled discretion of judges or juries.

In light of the explicit statutory procedures to be followed in capital felony cases, it clearly appears that the defendant led the trial judge into error by engaging him

---

**2.** 535 F.2d 198 (2nd Cir.), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976).

**3.** *Id.* at 203.

**4.** 137 Ariz. 504, 508–09, 672 P.2d 169, 173–74 (1983).

**5.** 17 A.R.S. Ariz.R.Crim.P., Rule 17.–4(a).

**6.** 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

in a unilateral plea bargain arrangement whereby pleas of guilty were exchanged for a promise of life imprisonment. The manifest error rendered the guilty pleas void *ab initio* and not merely voidable. The court was without power to accept the conditional pleas. The pleas were therefore void and without legal effect. The pleas were not binding, and either party was free to withdraw from them. Consequently, the acceptance of the pleas did not place the defendant in jeopardy within the meaning of the sixth amendment to the United States Constitution or article I, section 14 of the Utah Constitution. Not having been placed in jeopardy, the defendant may be tried on the charges to which the void pleas were entered. Of course, on remand, defendant has the option of proceeding with a sentencing hearing or standing trial on reinstated pleas of not guilty.

The main opinion boldly asserts, without documentation, that judicial involvement in plea bargaining is widespread in this jurisdiction. I am not so persuaded, particularly because no such instances of judicial impropriety have surfaced in any of the cases previously decided by this Court. However, even assuming that such impropriety is indeed prevalent, I deem it far more appropriate to squarely meet the issue rather than sanction the practice as "harmless error" and simply hope that the evil will go away.

STEWART, Justice (concurring in result and concurring in the opinion in part):

I concur in Parts I and II of the plurality opinion, and I concur in the result of the opinion but on somewhat different grounds. The key question in this case is not the validity of the defendant's plea of guilty, but the enforceability of the condition attached to the plea. The trial judge made an agreement with the defendant that he would plead guilty to a capital homicide charge and in return the trial judge would sentence the defendant to life imprisonment, a lawful sentence in a capital homicide case. The trial judge has now reneged on that agreement and given the defendant the choice of either withdrawing his guilty plea and pleading not guilty or of standing on his plea of guilty and going to a penalty hearing to determine whether he will be sentenced to death or life imprisonment. The defendant seeks to have the Court direct the trial court to sentence the defendant to life imprisonment pursuant to the terms of the agreement.

The issue is whether due process requires the trial court to perform the agreement and sentence the defendant to life imprisonment. In *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), the Supreme Court held with respect to a plea bargain broken by the government that it is for the state courts to determine whether a defendant is entitled to specific enforcement of the plea bargain or whether he is only entitled to withdraw his guilty plea and go to trial on the crime charged.

In the instant case the condition attached to the defendant's guilty plea was proposed by the defendant, not the prosecutor or the trial judge. Although it was the defendant who was the prime mover in the whole affair, the prosecution clearly acquiesced in the agreement, at least as far as the record shows. Nevertheless, I submit that the trial judge's decision to refuse to enforce the condition of the plea was not error in these circumstances. Rule 11 of the Utah Rules of Criminal Procedure states that even after a plea bargain has been accepted by the court, "if the judge decides that final disposition should not be handled in conformity with the plea agreement, he shall so advise the defendant and thus call upon the defendant to either affirm or withdraw his plea." A number of reasons justify giving the trial judge such discretion up to the time of sentence. But after sentence has been pronounced, the trial judge may not then rescind the sentence, absent fraud or failure of the defendant to abide by the terms of the agreement. I do not believe that this rule violates the Due Process Clause under the ruling in *Santobello,* at least on the facts of this case.

If the defendant withdraws his guilty plea, as he may do under the trial court's order, he waives his right against double jeopardy and is no worse off than he was before he sought to protect himself from the death penalty by his aborted plea bargain, except that he has given a confession, which, for reasons explained by Justice Zimmerman, is not, in my view, prejudicial.

HOWE, Justice (concurring in the result):

I concur in the result. While I agree with much of the "misplea" analysis of the majority opinion, I prefer to rest my concurrence on the ground that Rule 11 of the Utah Rules of Criminal Procedure does not authorize a plea agreement between the defendant and the judge concerning the sentence to be imposed. Subsections (e)(6) and (f) of that rule provide:

(e)(6) If it appears that the prosecuting attorney or any other party has agreed to request or recommend the acceptance of a plea to a lesser included offense, or the dismissal of other charges, the same shall be approved by the court. If recommendations as to sentence are allowed by the court, the court shall advise the defendant personally that any recommendation as to sentence is not binding on the court.

(f) The judge shall not participate in plea discussions prior to an agreement being made by the prosecuting attorney, but once a tentative plea agreement has been reached which contemplates entry of a plea in the expectation that other charges will be dropped or dismissed, the judge, upon request of the parties, may permit the disclosure to him of such tentative agreement and the reasons therefore in advance of the time for tender of the plea. A judge may then indicate to the prosecuting attorney and defense counsel whether he will approve the proposed disposition. Thereafter, if the judge decides that final disposition should not be handled in conformity with the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea.

It is to be noted that these subsections authorize only plea agreements between the prosecution and the defendant for the entry of a plea to a lesser included offense in the expectation that other charges will be dropped or dismissed. There is nothing in the language of the subsections which would authorize a plea agreement with the prosecution or the judge based on the sentence to be imposed. To the contrary, subsection (e)(6) states that if in the disclosure to the court, a recommendation as to sentencing appears, the court shall advise the defendant personally that any recommendation as to sentence is not binding on the court.

The agreement made by the trial judge here to impose a life sentence is not authorized by Rule 11 and thus is not enforceable by either the defendant or the court. Furthermore, even if the agreement were authorized, the last sentence of Rule 11(f) gives the judge the right to rescind his approval of it before sentencing. Thus, I conclude that the judge was free to withdraw from the agreement prior to the time that sentencing was actually pronounced. Due process, however, demands that the defendant who was lead into pleading guilty upon the sentencing agreement of the judge now be allowed to withdraw his plea should he so desire. *United States v. Gilligan,* 256 F.Supp. 244. Should the defendant elect to do so, the trial court can take such prophylactic measures as are necessary to afford the defendant a fair trial untainted by knowledge of the making and withdrawal of the guilty plea.

This result, *i.e.,* that the agreement is unenforceable (but not void) and that the trial judge may withdraw from any promise made as to sentencing before sentencing is actually pronounced, will not bring about the mischief feared by the majority opinion. A defendant who has been sentenced in accordance with a judge's plea agreement has no complaint. He has received the benefit of an executed agreement and would not be freed for mere technical errors. The trial judge here was

fortunate to have detected his error before sentencing and should be allowed to withdraw from his commitment provided he restores the defendant to his original position without prejudice.