**STATE of Utah, Plaintiff and Respondent,**

v.

**Byron AMBROSE, Defendant and Appellant.**

**No. 15903.**

Supreme Court of Utah.

July 9, 1979.

**20.** *Griffeth v. Zumbrennen*, Utah, 577 P.2d 129 (1978).

Stott, Young & Wilson, Provo, D. John Musselman, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Defendant appeals from the denial by the district court of his motion to dismiss a charge of attempted homicide, claiming he has been once in jeopardy for this offense. We conclude defendant is correct, and order the district court to dismiss the charge against defendant. All statutory references are to Utah Code Ann., 1953, as amended.

Defendant was charged with attempted homicide[1] and the case was tried before a jury in the Fourth District Court for Utah County on May 22, 1978. At 4:15 p. m. that day, the jury retired to deliberate. Subsequently, the bailiff indicated to the court that the jurors were having difficulty reaching a verdict; and at 5:30 p. m. the jurors were reconvened in the courtroom in the presence of defendant and his counsel. The following colloquy then took place:

THE COURT: Let the record show that all the jurors are present in the jury box and the defendant is in court with his counsel.

Members of the jury, I am informed by the bailiff that you are having some difficulty, is that correct?

(Heads of the jurors were nodded.)

Do you have the jury list?

(The clerk handed the jury list to the court.)

Do you suppose if you were able to deliberate further, go over the instruc-tions one by one further that you may be able to come to an agreement? Betty Lue Gonzales?

JUROR GONZALES: I don't think we would, Your Honor.

THE COURT: Karma Startup?

JUROR STARTUP: There is a ques-tion in my mind.

THE COURT: Kate James?

JUROR JAMES: There is a question.

THE COURT: Robert Mendenhall?

JUROR MENDENHALL: What is the question?

THE COURT: Do you suppose that if you went back to your jury room, dis-cussed it further and each person reexam-ined his position and go over the instruc-tions slowly and carefully, that you could arrive at a verdict?

JUROR MENDENHALL: We have got a couple of personalities, Your Honor, that aren't going to change no matter how long we stay in there.

THE COURT: Anything, Mr. Woot-ton?

MR. WOOTTON:. Your Honor, from the last calculations it costs about eight hundred dollars a day to run this court. I would strongly—

THE COURT: It's more than that.

MR. WOOTTON: That is for you. But we strongly—I strongly recommend to you—

THE COURT: You mean Utah Coun-ty?

MR. WOOTTON: Yes, sir.

THE COURT: Two of us in this func-tion are paid by the State of Utah.

MR. WOOTTON: I would recommend strongly that we urge the jury to arrive at a verdict or to exercise every conceiva-ble effort to do so before we declare a mistrial and try this case again, consider-ing the costs involved, the expense, incon-venience to everybody, including the wit-nesses and the defendant. I don't think—

THE COURT: Do you consider that error in the present state of the record, Mr. Esplin?

---

1. §§ 76–4–101, 76–5–203.

MR. ESPLIN: Yes, Your Honor.

THE COURT: I will declare a mistrial. And ladies and gentlemen, you are excused.

On May 30, 1978, defendant filed a motion to dismiss on the grounds that retrial of the case would violate his constitutional right to be placed only once in jeopardy for the same offense.[2] The motion was denied by the court on June 2, 1978, and defendant brings his appeal from that denial.

■ The State first argues the appeal is inappropriate under the terms of § 77-39-3, which provides for an appeal only from a final judgment or an order made after judgment which affects substantial rights of the party. The denial of defendant's motion is a "final" judgment. The denial effectively prevents defendant from obtaining his requested relief, which is based on a substantial constitutional right guaranteed him under both the Utah and the United States Constitutions.[3] The order denying defendant's motion is clearly a complete and final rejection of his double jeopardy claim, a claim by which defendant essentially argues not the *merits* of the charge against him, but rather that the State has forfeited the *power* to again subject him to a criminal proceeding.

■ Furthermore, to require defendant to pursue his claim after retrial would, as a practical matter, emasculate the guarantee against double jeopardy, subjecting defendant to the very trauma the provision intends to prevent. The double jeopardy clause protects an individual not simply from subjection to more than one punishment, but from being twice *put to trial* for the same offense. The guarantee assures that, with certain exceptions, an individual will not be forced to endure the strain, embarrassment, anxiety and expense of a criminal trial.[4] These important aspects of the guarantee would clearly be negated if the defendant were forced to endure a second trial before an appeal could be taken. Thus, the rights protected by this provision cannot be fully vindicated on appeal following a second trial.[5]

Our Constitution guarantees not only that no "person be twice put in jeopardy for the same offense,"[6] but also "the right to appeal in all cases."[7] As discussed above, the rights protected by the double jeopardy guarantee necessitate review on appeal before a second trial if the defendant is to enjoy full protection of the clause; the statutory provisions for appeal cannot be in derogation of the constitutional rights, and we therefore hold defendant's appeal to be properly taken.

■ Defendant argues he may not be retried because the above-quoted comments by the prosecutor were made in bad faith effort to motivate defendant to move for a mistrial, which would allow the State to retry the case.[8] We perceive the remarks of the prosecutor in the presence of the jury as unnecessary and improper, but we cannot say from the state of the record that they were initiated out of a bad faith desire to provoke a request for a mistrial from defendant.

2. U.S.Const., Amend. V; Utah Const., Art. I, § 12.

3. The double jeopardy provisions of the U.S. Constitution, Amendment V, has been made applicable to the State in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

4. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

5. *Accord, Muller v. State,* Alaska, 478 P.2d 822 (1971).

6. Utah Const., Art. I, § 12.

7. Id.

8. The State may usually retry an accused if he procures the declaration of a mistrial; however, the double jeopardy clause bars retrial where bad faith conduct by a judge or prosecutor is intended to provoke a mistrial request and thereby allow the State an additional opportunity to convict the defendant. *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

On the other hand, the State claims the court ordered the mistrial because the jury was hopelessly deadlocked.[9] The transcript belies the State's claim, however; the court queried defense counsel, *after* the statements of the prosecutor concerning the cost of retrying defendant, whether defense counsel "considered that error in the present state of the record." Counsel replied, "Yes, Your Honor," after which the court immediately declared a mistrial and discharged the jury. Thus it clearly appears the court considered its conversation with the prosecutor to be detrimental to defendant's position, and the mistrial was declared at least in part because of the remarks of the prosecutor. The question to defense counsel concerning "error in the record" obviously was not referring to the state of the jury. Whether the court also based its action upon its belief of a "hung" jury is impossible to discern, since the court failed to put the reasons for its action in the record. In any event, the *sua sponte* declaration of a mistrial by the court prevents retrial of defendant.

It is well established in Utah that jeopardy attaches when an accused is put on trial in a court of competent jurisdiction, upon a valid indictment (or information), and a jury has been sworn and impaneled.[10]

Utah law also establishes that discharge of the jury without a verdict operates as an acquittal, unless: (1) the defendant consents to the discharge, or (2) "legal necessity" requires the discharge in the interest of justice.[11] Although the concept of legal necessity has been variously expressed as "special necessity," "absolute necessity," or "manifest necessity," the terms all imply that, absent the consent of the defendant to a mistrial, the court must refrain from prematurely discharging the jury unless it determines, after careful inquiry, that discharging the jury is the only reasonable alternative to insure justice under the circumstances. Courts have steadfastly refused to lay down specific rules in this area, following instead the admonition of Justice Story in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824):

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

The United States Supreme Court has in more recent cases reiterated that courts must exercise their discretion to discharge a jury without the consent of an accused very carefully, in view of the accused's "valued right to have his trial completed by a particular tribunal." [12] In *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1970), the court explained:

If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a signifi-

---

9. It is well established that an accused may be retried for the same offense if the court properly discharges the jury because there is no reasonable probability that they can agree on a verdict. *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *State v. Whitman,* 93 Utah 557, 74 P.2d 696 (1973); *State v. Gardner,* 62 Utah 62, 217 P. 976 (1923).

10. *State v. Whitman,* supra note 9, *State v. Thompson,* 58 Utah 291, 199 P. 161 (1921).

11. Id.

12. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

cant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution . . . . In the absence of such a motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.

And in *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978), the court stated:

. . . in view of the importance of the right [of the accused to have his trial concluded by a particular tribunal], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. He must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant.

This Court has similarly declined to lay down specific rules in this area, but has given examples of what would be considered "manifest necessity":

The court cannot arbitrarily discharge a jury, nor should it ever be discharged until it appears from the statements of the jurors, and the facts and circumstances of the case, that every reasonable hope of agreement on a verdict has vanished; unless there is a breakdown in the judicial machinery which renders further orderly and systematic procedure impracticable, such as the illness of the court, or a juror, or the defendant, or in some cases counsel; or reasons which the law will recognize as an absolute necessity, or

upon grounds provided by statute. Otherwise, the discharge operates as an acquittal.[13]

In *State v. Whitman,* the trial court became incensed at counsel for defendant, and discharged the jury over defendant's objections. This court held the trial court had abused its discretion and that the discharge operated as an acquittal, declaring:

There are cases where a jury may be discharged before returning a verdict and defendant again be put upon trial, but this case is not one of them. Here there was no apparent reason for declaring a mistrial and discharging the jury, except that the court was displeased with the conduct of counsel for defendant and evidently in doubt as to the correctness of some ruling it had made and the propriety of some comments which had passed between counsel and the court.[14]

Applying the foregoing principles to the case at hand, we believe the jury was unnecessarily discharged. Here, as in *State v. Whitman,* the court was "evidently in doubt as to . . . the propriety of some comments," but the record does not reveal a determination that discharging the jury was the only reasonable alternative to insure justice under the circumstances.

Defendant had a "significant interest in the decision whether or not to take the case from the jury," particularly since the trial had progressed to the final stage of jury deliberation. His counsel should have been consulted as to his wish concerning a mistrial. In addressing a similar situation, the California Supreme Court stated:

A defendant may choose not to move for or consent to a mistrial for many reasons. He may be of the opinion that no error in fact occurred, or if it occurred, that it was not prejudicial. He may believe that any error in admitting improper evidence can be cured by a motion to strike or a request for admonition, or can be refuted by impeachment of the witness or contrary defense evidence. In-

---

**13.** *State v. Whitman,* supra, note 10 at 74 P.2d 697.

**14.** Id. at 697.

deed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare.[15]

Although the State argues the court discharged the jury because it was hopelessly deadlocked, we do not think this can be supported by the above-quoted transcript of the proceedings. As we have noted, the record indicates the court apparently based its action on the comments of the prosecutor; however, we have no way of knowing whether that was its only motivation. In any event, no explanation was given by the court, and no discussion occurred concerning possible curative alternatives to a mistrial. Thus, we have no basis from which to conclude whether the court engaged in the "scrupulous exercise of judicial discretion" required when dealing with the important rights here involved.

■ In Utah, the trial court is required to make the exercise of its discretion in this situation a matter of record. In *State v. Whitman,* this Court paraphrasing *State v. Reed,* 53 Kan. 767, 37 P. 174 (1894), stated:

> . . . the question of the necessity for discharge was to be heard and determined by judicial methods, and such methods certainly contemplate that a record of the findings and determinations of the court should be made. It results from the cases that before the court may discharge a jury to which has been submitted the question of determining the guilt or innocence of the accused there

should exist, first, a legal necessity for such discharge; *second, the court must make inquiry and find and determine that such necessity existed at the time of the discharge; and, third, the essential facts as to such necessity, and the findings of the court thereon, must be made a matter of record, or the defendant may successfully plead former jeopardy when placed on trial again on the same charge.* [Emphasis added.] [16]

The trial court must, then, not only determine that legal necessity exists, but it must make its findings to that effect a matter of record, or a defendant may successfully claim former jeopardy on appeal. No such findings were made in this case, resulting in the disagreement of the parties as to the reasons for the discharge of the jury.

■ We cannot agree with the State's argument that defendant's failure to object to the court's discharge of the jury constitutes an implied consent to a mistrial and that he therefore waives the protection of the double jeopardy clause. We will not presume that mere silence in this situation can be equated to waiver of such an important constitutional right. In *Curry v. Superior Court of the City and County of San Francisco,* supra note 5, the California Supreme Court came to a similar conclusion, declaring:

> When a trial court proposes to discharge a jury without a legal necessity therefor, the defendant is under no duty to object in order to claim the protection of the constitutional guarantee, and his mere silence in the face of an ensuing discharge cannot be deemed a waiver.[17]

Additionally, the record clearly indicates the court acted so abruptly in discharging the jury that defendant's counsel had no opportunity to object. The double jeopardy protection is not so ephemeral that it vanishes if an accused does not anticipate and

---

15. *Curry v. Superior Court of City and County of San Francisco,* 2 Cal.3d 707, 87 Cal.Rptr. 361, 367, 470 P.2d 345, 351 (1970); also see *Larios v. Superior Court of Ventura County,* 24 Cal.3d 324, 155 Cal.Rptr. 374, 594 P.2d 491 (1979).

16. 74 P.2d at 698.

17. 87 Cal.Rptr. at 364, 470 P.2d at 348.

object to every unexpected action on the part of the court. In *United States v. Jorn,* supra, the Utah Federal District Court also abruptly discharged the jury without first consulting counsel. The United States Supreme Court stated:

> It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial. *United States v. Perez,* 9 Wheat. [579], at 580, 6 L.Ed. [165], at 166. Therefore, we must conclude that in the circumstances of this case, appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment.[18]

We hold that defendant's "right to have his trial completed by a particular tribunal" has not been adequately protected, and retrial is barred by the double jeopardy provisions of our State and Federal Constitutions.

WILKINS and STEWART, JJ., concur.

CROCKETT, Chief Justice (dissenting):

There would seem to be no question that the remarks of the prosecuting attorney relating to the desirability of pressuring the jury to arrive at a verdict because of money considerations were inappropriate and ill-advised; nor that the situation was not helped any by the court joining in the discussion as to who pays such expenses. But such unfortunate circumstances to develop once in a while during the stress of trial, and that is the reason that the court has the authority to declare a mistrial so that the processes of justice can be carried out with fairness to both sides.[1]

We should indulge in no conjecture as to whether the impasse in the jury was as to conviction or acquittal. The prosecutor's recommendation that the jury be urged to "exercise every conceivable effort" to arrive at a verdict indicated his desire that the case be disposed of (this could be either one way or the other, guilty or not guilty) in order to save the time, trouble and expense of another trial.

The court was then confronted with two propositions: first, from the statement of the jurors he could well have thought there was very little likelihood of the jury ever arriving at a verdict; second, even if they did, and the verdict was guilty, there was a basis upon which he could have believed that there was reversible error in the record and that any further proceeding could be of no use. The court exercised the prerogative which is his in conducting the trial and concluded that the interests of justice required the granting of a mistrial. He asked defendant's counsel if he considered what had occurred to be error, to which he responded in the affirmative. When the court stated, "I will declare a mistrial," defendant's counsel had ample opportunity to indicate disagreement with the procedure if he so desired; but he chose to sit by without comment, question or objection, and permit the jury to be discharged. Under well recognized rules, if he had disagreed with that procedure, he should have made timely objection, or be deemed to have waived any objection thereto.[2]

Defendant's counsel had not only the duty to provide the best possible defense for his client, but also had, as an officer of the court, a duty to see that the processes of justice were fairly and properly carried out. It would be inconsistent with that duty for him to have in mind that there was substantial error in the record, abide the out-

---

18. 400 U.S. at 487, 91 S.Ct. at 558.

1. 76 Am.Jur.2d, Trial, § 1083; 3 Wharton's Criminal Procedure, § 519.

2. 63 A.L.R.2d 782, 793; 21 Am.Jur.2d, Criminal Law, § 195.

come of a trial, then if it resulted unfavorably, seek to upset the result. It does not harmonize with my ideas of fairness and justice to say that the defendant has been in jeopardy, when in fact the jury was not allowed to make a determination as to guilt or innocence. In view of the combination of circumstances then confronting the court: that there appeared to be very little likelihood that the jury would agree upon a verdict, plus the fact that both the court and defense counsel thought that in discussing that matter, error had occurred which would vitiate any verdict anyway, the trial court took the logical and proper course—of declaring a mistrial.

The defendant is indeed entitled to all of the protections the law affords, including the right to have his guilt or innocence determined by an unprejudiced jury. By the same measure of fairness, the prosecution, and the public interest it is purposed to protect, are entitled to a determination as to the charge against the defendant in the same manner. That result has not yet been achieved in this case; and in my judgment, the case should be remanded to complete the processes of justice.[3]

HALL, J., concurs with the views expressed in the opinion of CROCKETT, C. J.

3. That when a prejudicial error has occurred, the defendant is not entitled to an outright release, but to a new trial in which such errors are eliminated, see *State v. Jaramillo*, 25 Utah 2d 328, 481 P.2d 394 (1971) and authorities cited therein.