STATE of Utah, Plaintiff and Appellee,

v.

David Elliott CASTLE, Defendant
and Appellant.

No. 960755–CA.

Court of Appeals of Utah.

Jan. 2, 1998.

Bradley P. Rich and Hakeem Ishola, Salt
Lake City, for Appellant.

Jan Graham and Thomas B. Brunker, Salt Lake City, for Appellee.

Before DAVIS, P.J., and BENCH and ORME, JJ.

## OPINION

BENCH, Judge:

Defendant David Elliot Castle appeals his conviction for failure to stop at the command of a police officer, a third degree felony, in violation of Utah Code Ann. § 41–6–13.5 (1993), and numerous misdemeanors. Defendant contends that he was twice put in jeopardy in violation of his constitutional rights. We affirm.

## BACKGROUND

On September 26, 1994, a Utah Highway Patrol officer pulled defendant over for speeding. When the officer asked defendant for his driver's license, defendant responded, "I don't need a license, I'm a free citizen of the republic." Additionally, defendant stated that a warrant had been issued for his arrest, and that he carried a concealed weapon. The officer ordered defendant to exit the vehicle. Defendant refused and informed the officer that he intended to drive to Monticello to see the judge. The officer told defendant he could not see a judge while carrying a concealed weapon. After defendant again refused to exit his vehicle, the officer walked to his patrol car to call for backup, and defendant fled the scene. Defendant was later arrested and charged with failure to stop at the command of a police officer, speeding, interference with a police officer making a valid arrest, escape, driving with a suspended or revoked license, and carrying a concealed weapon.

Defendant chose to represent himself at trial. The court told defendant that if he could not afford an attorney, the court would appoint one for him. Defendant refused the offer. The court also offered to appoint counsel to help defendant with court procedures. Defendant responded that he would not accept the services or assistance of appointed counsel.

Throughout the trial, defendant refused to follow the trial court's instructions. At the end of voir dire, and in the presence of potential jurors, the court asked defendant if he had any challenges for cause. Instead of responding to the court, defendant turned to the potential jurors and said, "Well you know this is a witch trial." During defendant's opening statement, defendant declared that he held the court in "nothing but contempt" and said, "Maybe I'll be found in contempt and go to jail." The trial court continuously admonished defendant to stay within the scope of an opening statement. For example, when defendant argued with the court that defendant's constitutional philosophy had relevance, the court explained that

> the purpose of the opening statement is for you to explain, or outline for the jury, what the evidence will show in this case. Now, I've given you some leeway, but, really, your background and your belief about the constitution are not relevant here, and I hope you will move now to what the evidence will show in this case. That's the purpose of the opening statement.

Defendant turned to the jury and said, "Ya [sic] see, you will be prevented from hearing my side. That's what the attempt from the bench will be."

Besides describing his personal constitutional philosophy, defendant also made several appeals for sympathy. After being warned that his opening statement would be ended because he did not stay within the scope of an opening statement, defendant persisted, and the following discussion ensued:

> The Court: I'm going to cut you off on this subject for the second time, Mr. Castle.
>
> Mr. Castle: Well alright. What do you want me to do now?
>
> The Court: Whatever you have that pertains to what the evidence will show with regard to the charges.
>
> Mr. Castle: Well, what about the odds— What about the jury of my peers? Do I ever get a jury of my peers?
>
> The Court: You can sit down, then, Mr. Castle. Your opening statement is over.
>
> Mr. Castle: No. I'm not going to sit down. This is my trial.

The Court: Your opening statement will be—

Mr. Castle: No, it isn't.

The Court: I'm going to say it one more time, Mr. Castle. Your opening statement is over.

Mr. Castle: I don't want to be put in jail, but they will do that here.

During the lunch recess, and out of the jury's presence, the judge stated on the record that he had seen a man sitting behind defendant, who continually whispered to defendant during the proceedings. The court told defendant the whispering would not be allowed to continue because it disrupted the proceedings. Further, because the whispering man was not licensed to practice law in Utah, the court stated that the man could not assist defendant with his defense.

While cross-examining the highway patrol officer who had arrested him, defendant continuously refused to follow the court's instructions. The prosecutor expressed to the court the concern that his compelled objections would antagonize the jury. Consequently, the court admonished defendant for asking irrelevant questions and directed defendant to ask questions about the charges. When defendant persisted with a line of questions regarding constitutional philosophy, the court ordered defendant to move to another line of questioning. Defendant responded, "I object to jury tampering. I consider it jury tampering, to fail to allow all the arguments to come before the jury." The court noted defendant's objection and overruled it. Other instances of defendant's inappropriate conduct included using the first name of the judge, continuously making comments to the jury, and placing written material in locations accessible to the jury suggesting that jurors can ignore the law.

Finally, after a prolonged argument with the judge about the relevancy of a statute, the court held defendant in contempt of court. The following exchange occurred in the presence of the jury:[1]

The Court: Mr. Castle. I find you in contempt of court. Do you have anything to say before I sentence you.

Mr. Castle: I demand a court trial on a contempt of court charge.

The Court: You are not entitled to a jury trial on that charge. I sentence you to 30 days in jail.

Members of the jury, because this has happened, I'm forced to declare a mistrial in this case. I'm reluctant to do that, because it means your effort here is wasted, but Mr. Castle is not following instructions—

Mr. Castle: Your Honor, you're the one who is in contempt of court.

The Court: You're excused, members of the jury. Bailiff, take the defendant into custody.

Before the scheduled retrial, defendant filed a pro se motion demanding that the court dismiss the information on double jeopardy grounds. The trial court denied the motion, finding that a mistrial was necessary because jurors would likely have been diverted from their fact finding role, and the "courtroom spectacle created by defendant" would deny defendant and the State a fair trial. At the second trial, defendant failed to appear and was convicted *in absentia.* After retaining counsel, defendant filed a motion in arrest of judgment and again raised the double jeopardy issue. The trial court denied the motion and this appeal followed.

## STANDARD OF REVIEW

■ We will not upset a trial court's ruling on a mistrial " 'unless it clearly appears the trial court abused its discretion.' " *State v. Pearson,* 818 P.2d 581, 582 (Utah Ct.App. 1991) (quoting *State v. Grueber,* 776 P.2d 70, 75 (Utah Ct.App.1989)).

## ANALYSIS

■ Defendant brings his claim of double jeopardy based on provisions of the federal

---

1. We observe that the trial court should have handled the contempt proceedings outside the jury's presence like it handled the incident involving the whispering man. In the ordinary case, addressing the contempt outside the jury's presence would allow the trial to continue without tainting the jury with the contempt charge. However, defendant does not challenge the order of contempt, nor does he challenge when and where it was entered.

and state constitutions. The Fifth Amendment to the United States Constitution provides, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Utah Constitution provides, "nor shall any person be twice put in jeopardy for the same offense." Utah Const. art. I § 12.[2] This important "'guarantee assures that, with certain exceptions, an individual will not be forced to endure the strain, embarrassment, anxiety and expense of a [second] criminal trial' for the same offense." *State v. Nilson,* 854 P.2d 1029, 1030–31 (Utah Ct. App.1993) (quoting *State v. Ambrose,* 598 P.2d 354, 357 (Utah 1979)).

▋ It is well settled that jeopardy attaches in a criminal trial when a jury has been sworn and impaneled. *See Ambrose,* 598 P.2d at 358. If a trial is prematurely terminated, the State may thereafter reprosecute a person under specific circumstances. Utah Code Ann. § 76–1–403 (1995) codifies the double jeopardy guarantee and its exceptions. Subsection (4)(c) provides that reprosecution is proper if:

> (c) *The court finds and states for the record that the termination is necessary because:*
>
> (i) It is physically impossible to proceed with the trial in conformity with the law; or
>
> (ii) There is a legal defect in the proceeding not attributable to the state that would make any judgment entered upon a verdict reversible as a matter of law; or
>
> (iii) *Prejudicial conduct in or out of the courtroom not attributable to the state makes it impossible to proceed with the trial without injustice to the defendant or the state;* or
>
> (iv) The jury is unable to agree upon a verdict; or
>
> (v) False statements of a juror on voir dire prevent a fair trial.

(Emphasis added.)

▋ In ordering the mistrial here, the trial court expressly found only that "I'm forced to declare a mistrial in this case. I'm reluctant to do that, because it means your effort here is wasted, but Mr. Castle is not following instructions." Ideally, in entering its order of mistrial, the court should have more closely tracked the statutory language. However, the record in this case clearly reflects that the mistrial was based on defendant's "[p]rejudicial conduct in or out of the courtroom not attributable to the state mak[ing] it impossible to proceed with the trial without injustice to the defendant or the state." *Id.* § 76–1–403(4)(c)(iii). Any deficiency in the trial court's findings is therefore harmless.

▋ When ordering a mistrial, the trial court must support its ruling by showing that legal necessity required the mistrial in the interests of justice. *See Ambrose,* 598 P.2d at 358. "The doctrine of legal necessity means that absent the consent of the defendant to a mistrial, the court must refrain from prematurely discharging the jury unless it determines, after careful inquiry, that discharging the jury is the only reasonable alternative to insure justice under the circumstances." *State v. Pearson,* 818 P.2d 581, 584 (Utah Ct.App.1991) (citing *Ambrose,* 598 P.2d at 358).

▋ Defendant relies on *State v. Whitman,* 93 Utah 557, 74 P.2d 696 (1937) to argue the trial court did not meet the legal necessity standard. In *Whitman,* the trial court declared a mistrial because "the court became somewhat incensed at [defense] counsel" over remarks made during questioning of his principal witness. *Id.* at 558, 74 P.2d at 697. The supreme court stated "there was no apparent reason for declaring a mistrial and discharging the jury, except that the court was displeased with the conduct of counsel for defendant and evidently in doubt as to the correctness of some ruling it had made and the propriety of some comments which had passed between counsel and the court." *Id.* Because the trial court did not use the legal necessity analysis, the Utah

---

**2.** Defendant has not provided a separate analysis under the Utah Constitution and, therefore, our analysis does not differentiate between the state and federal constitutions. *See State v. Seale,* 853 P.2d 862, 873 n. 6 (Utah 1993).

Supreme Court ruled that the unnecessary discharge of the jury operated as an acquittal of the defendant. *See id.*

Defendant argues here that "the court became incensed with [defendant] because he persisted in asking Sergeant Hall, during cross-examination, whether the relevant statute prohibited him from possessing a gun. As a result of [defendant's] failure to adhere to admonition, the court found him in contempt." In contrast to the solitary incident of attorney misconduct in *Whitman*, the record here shows defendant's persistent refusal to comply with the trial court's instructions *throughout* the proceedings.

Recognizing the need for proper courtroom conduct, the United States Supreme Court has stated: "[U]nquestionably an important factor to be considered [when determining whether to order a mistrial] is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process." *United States v. Jorn*, 400 U.S. 470, 485–86, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). Furthermore, the Supreme Court has determined that:

> Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred. The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper performance of his "duty, in order to protect the integrity of the trial, to take

prompt and affirmative action to stop ... professional misconduct."

*Arizona v. Washington*, 434 U.S. 497, 513, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978) (quoting *United States v. Dinitz*, 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976)).

■ In Utah, appellate courts have recognized the trial court's authority to order a mistrial when misconduct in the courtroom prejudices the jury. In *Pearson*, defense counsel, during a jury trial, asked the defendant if the State had offered him a plea bargain. *See Pearson*, 818 P.2d at 582. The prosecution objected and the trial court sustained the objection. "[T]he prosecution moved for a mistrial, or in the alternative, a strongly worded instruction to the jury." *Id.* The defendant believed the court could cure the misconduct through an instruction to the jury. *See id.* at 584. The trial court, however, "found the statement of defense counsel to be highly prejudicial to the prosecution because of the doubt it likely placed in the minds of the jurors as to the strength of the prosecution's case." *Id.* Consequently, the court ruled:

> Because the trial court is in the best position to determine the possible juror bias that may have resulted from defense counsel's question and the likelihood of removing the bias through a cautionary instruction, that finding is entitled to deference by this court. Inasmuch as the trial court had an articulable basis for declaring a mistrial, we conclude that it did not abuse its discretion in so doing. The judge weighed the expense a new trial would demand, but determined that a mistrial must be declared in that case.

*Id.* at 584–85.[3] In the present case, the trial court determined that defendant had acted contrary to the court's instructions, and concluded that a mistrial was necessary.[4]

---

**3.** The reason for deference to the trial court is clear. We are wholly unable to glean from the typewritten record "body language" factors that may have weighed heavily in the judge's decision. These factors might include jurors shaking their heads and pursing their lips or looks of disgust, disdain, and frustration, all of which can only be observed by one present in the courtroom.

**4.** In deciding whether legal necessity warrants a mistrial, courts must also consider whether the State provoked the mistrial. *See State v. Trafny*, 799 P.2d 704, 709 (Utah 1990) ("[D]ouble jeopardy bars retrial where bad faith conduct by a judge or prosecutor is intended to provoke a mistrial so as to afford the prosecution a more favorable opportunity to convict."). Defendant has not alleged any prosecutorial or judicial bad faith.

## CONCLUSION

The trial court stated an articulable basis for ordering a mistrial, which is clearly borne out in the record. *See* Utah Code Ann. § 76–1–403(4)(c). We cannot say that the trial court abused its discretion in so ruling. *See Pearson,* 818 P.2d at 582.

We therefore affirm defendant's conviction and sentence.

DAVIS, P.J., and ORME, J., concur.