1999 UT App 149

**WEST VALLEY CITY, Plaintiff and Appellee,**

v.

**Randy PATTEN, Defendant and Appellant.**

**No. 981197–CA.**

Court of Appeals of Utah.

May 6, 1999.

---

Herschel P. Bullen, Salt Lake City, for Appellant.

J. Richard Catten, West Valley City, for Appellee.

Before GREENWOOD, Assoc. P.J., and BILLINGS and JACKSON, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Defendant Randy Patten appeals the trial court's denial of his motion to dismiss the charges against him for violating a protective order on the basis of double jeopardy. We reverse.

## BACKGROUND

¶ 2 Defendant was charged with three counts of violating a protective order pursuant to Utah Code Ann. § 77–36–3 (1995 & Supp.1998). Defendant pleaded not guilty and trial commenced before the Judge Ronald Nehring. After several witnesses testified, the court discovered that the alleged victim, Susan Patten, had previously retained an attorney, Lorie Huber, to represent her in a divorce action against defendant. The trial court also learned that Ms. Huber's husband, John Huber, an assistant West Valley City attorney and prosecutor, was a colleague of Keith L. Stoney, the West Valley City prosecutor representing West Valley City (the City) in the charges against defendant.

¶ 3 Upon learning this information, the trial court called a recess and spoke off the record with both attorneys concerning a possible conflict of interest. After this discussion, the trial judge stated he had received information about the parties that was beyond the record. He then, sua sponte, declared a mistrial on the basis that, although there was no "direct evidence of conflict," the relationship between Mr. and Ms. Huber raised "questions of impropriety" that necessitated the declaration of a mistrial. Judge Nehring also stated he would reassign the case because he knew a "considerable amount about this case beyond what's on the record on this case." Defense counsel stated he had not "made any requests." West Valley City objected to the court's order.

¶ 4 Subsequently, the trial court entered a written order of mistrial on October 2,

1997. The order contained the following Facts and Conclusion:

## FACTS

Plaintiff called witness[es] and adduced evidence c uring the course of the trial. During the course of trial, testimony disclosed that the alleged victim had retained private counsel to act on her behalf in various proceedings. The victim's private counsel is the wife of a West Valley Assistant Prosecutor. The taking of evidence ceased at this point.

## CONCLUSION

While there is no direct evidence of impropriety and the Court is extremely confident that there was, in fact, none[, t]he Court finds that the mere possibility of conversations between the Assistant Prosecutor and his wife, the victim's private attorney, suggests an appearance of impropriety such that the Court, *sua sponte,* on its own motion and against the prosecution's objection, declares a mistrial. The Court further notes that it is not stating that there is a conflict, *per se,* in or with the West Valley City office and this case.

¶ 5 Defendant's case was subsequently reassigned to Judge Judith Atherton. Defendant moved to dismiss the second case against him on the basis of double jeopardy. After briefing and oral argument on defendant's motion to dismiss, Judge Atherton entered a Memorandum Decision denying defendant's motion to dismiss, stating:

The basis of the judge's reassignment of the case to another judge is a clear and compelling basis for declaring a mistrial under U.C.A. [section] 76–1–403(4)(c)(iii) (Supp.1997), "[p]rejudicial conduct in or out of the courtroom not attributable to the state, mak[ing] it impossible to proceed with trial without injustice to the defendant or state." The judge, having heard pertinent information concerning the pending case outside of the formal court proceeding, acted properly to preserve defendant's right to a fair trial.

Although the Order of Mistrial does not address the judge's findings concerning his recusal, those findings on the record support the order of mistrial.

¶ 6 This interlocutory appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 7 A trial court's decision to grant or deny a mistrial will not be disturbed on appeal absent an abuse of discretion. *See State v. Castle,* 951 P.2d 1109, 1111 (Utah Ct.App.1998). However, because Judge Atherton was in no better position than this court to determine the necessity of a mistrial, we review her denial of defendant's motion to dismiss under a correction of error standard. *See State ex rel. Rd. Comm'n v. Christensen,* 13 Utah 2d 224, 227, 371 P.2d 552, 555 (Utah 1962) (stating judge presiding over trial in best position to determine propriety of mistrial). Finally, "insofar as this appeal turns on the proper interpretation of section [76–1–403], it presents a question of law which we will review for correctness, with no particular deference accorded to the trial court." *State v. Fixel,* 945 P.2d 149, 151 (Utah Ct.App. 1997).

## ANALYSIS

¶ 8 A fundamental principle of our criminal justice system is that the protection against double jeopardy attaches in a bench trial "when the first witness is sworn and the court begins to take evidence." *Brunner v. Collection Div. of the Ut. St. Tax Comm'n,* 945 P.2d 687, 691 (Utah 1997) (additional quotations & citation omitted); *see also* Utah Code Ann. § 76–1–403(4) (1995 & Supp.1998). Because the declaration of the mistrial in this case occurred after several witnesses had been sworn and had testified, defendant's double jeopardy protections had attached. Therefore, we next turn to the question of whether the premature termination of the trial triggered defendant's constitutional guarantee against double jeopardy, precluding a second trial on the charges.

¶ 9 The Double Jeopardy Clause of the United States Constitution provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In the landmark double jeopardy case of *United States*

*v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), the United States Supreme Court interpreted the protection against double jeopardy to mean that reprosecution of a defendant following the declaration of a mistrial is prohibited unless "manifest necessity" existed for prematurely terminating the trial. *Id.* at 579. In other words, trial judges must exercise "sound discretion" before granting a mistrial, a power that "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id.*

¶ 10 The corresponding protection against double jeopardy in the Utah Constitution provides that no person "shall ... be twice ... put in jeopardy for the same offense." Utah Const. art. I, § 12. Our Legislature has codified this constitutional protection against double jeopardy in section 76–1–403. When a trial court prematurely terminates a defendant's trial, reprosecution for the same offense is permitted only if:

> The court finds and *states for the record* that the termination is necessary because:
> (i) It is physically impossible to proceed with the trial in conformity with the law; or
> (ii) There is a legal defect in the proceeding not attributable to the state that would make any judgment entered upon a verdict reversible as a matter of law; or
> (iii) Prejudicial conduct in or out of the courtroom not attributable to the state makes it impossible to proceed with the trial without injustice to the defendant or the state; or
> (iv) The jury is unable to agree upon a verdict; or
> (v) False statements of a juror on voir dire prevent a fair trial.

Utah Code Ann. § 76–1–403(4)(c) (1995 & Supp.1998) (emphasis added). Utah courts have interpreted the protection against double jeopardy, consistent with the federal provision, to mean that upon the declaration of a mistrial, a defendant may not be retried on the same charges unless a "legal necessity" justified termination of the trial. *State v. Ambrose,* 598 P.2d 354, 358 (Utah 1979) (equating Utah's standard of "legal necessity" with federal "manifest necessity" standard).[1] Most recently, this court held that

> [w]hen ordering a mistrial, the trial court must support its ruling by showing that legal necessity required the mistrial in the interests of justice. "The doctrine of legal necessity means that absent the consent of the defendant to a mistrial, the court must refrain from [declaring a mistrial] unless it determines, *after careful inquiry,* that [declaring a mistrial] is the only reasonable alternative to insure justice under the circumstances."

*Castle,* 951 P.2d at 1112 (emphasis added) (quoting *State v. Pearson,* 818 P.2d 581, 584 (Utah Ct.App.1991)).

¶ 11 In *Ambrose,* 598 P.2d at 356–57, the Utah Supreme Court examined whether manifest necessity existed when the jury was prematurely discharged because it was unable to reach a verdict. In concluding that declaring a mistrial was improper, the court set forth standards to determine when manifest necessity exists for granting a mistrial. *See id.* at 358–61. First, a trial court must give an explanation for its decision and discuss "possible curative alternatives to a mistrial," giving the appellate court a "basis from which to conclude whether the court engaged in the 'scrupulous exercise of judicial discretion' required when dealing with the important [double jeopardy] rights." *Id.* at 360. Second, a trial court must enter findings of fact supporting its decision, making "the exercise of its discretion in this situation a matter of record." *Id.* Finally, a trial judge may not declare a mistrial "so abruptly ... that defendant's counsel ha[s] no opportunity to object." *Id.* If a trial court fails to follow any of these mandates, "a defendant may successfully claim former jeopardy on appeal." *Id.*

---

1. In defining manifest necessity, the double jeopardy provisions of the Federal and Utah Constitutions have been interpreted similarly. However, the Utah Supreme Court has stated that "we do not think our constitution[al protection against double jeopardy] necessarily must be interpreted as granting exactly the same protections as the federal constitution...." *State v. Franklin,* 735 P.2d 34, 38 (Utah 1987).

¶ 12 Other jurisdictions also provide guidance in determining when manifest necessity for declaring a mistrial exists. For example, in *Commonwealth v. Rivera,* 715 A.2d 1136 (Pa.Sup.Ct.1998), the court held that although there are no specific rules to determine whether manifest necessity for a mistrial existed, "the failure to consider less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest" in protection against double jeopardy. *Id.* at 1138 (citations omitted). Further, only when no reasonable alternatives to declaring a mistrial exist is a judge excused from exploring other options. *See Bailey v. State,* 219 Ga.App. 258, 465 S.E.2d 284, 286 (1995) (stating declaration of mistrial without consideration of other options proper where there existed no "alternatives for the trial judge to consider"); *People v. Williams,* 85 Mich.App. 258, 271 N.W.2d 191, 193 (1978) (same). Finally, "[a]ny doubt relative to the existence of manifest necessity should be resolved in favor of the defendant." *Rivera,* 715 A.2d at 1138 (citation omitted). Some courts have mandated even stricter requirements in holding that "[b]efore a trial judge sua sponte declares a mistrial, he or she should make explicit findings, after a hearing on the record, that no reasonable alternative exists." *Williams,* 271 N.W.2d at 193–94.

¶ 13 Thus, to avoid double jeopardy, it must be demonstrated that a mistrial was required by the interests of justice. The trial court must conduct a careful inquiry on the record in which less drastic alternatives are explored by the court and counsel. Explicit findings are also required, stating the reasons for the mistrial and an explanation of why there are no alternatives to a mistrial. Also, if uncertainty as to the necessity of the mistrial exists, any doubt must be resolved in favor of the defendant.

¶ 14 Like *Ambrose,* the record in this case is unclear about why the potential conflict arising out of Mr. and Ms. Huber's relationship necessitated the mistrial. Although the trial judge may have carefully considered his reasons for declaring a mistrial, he failed to adequately explain his determination on the record or enter adequate findings of fact supporting his decision. Indeed, the court concluded there was no actual impropriety, only the possibility of the appearance of impropriety. In addition, nothing in the record suggests the judge considered any alternatives to declaring a mistrial, or gave either party a meaningful opportunity to address the issue.[2] In fact, the City specifically objected to the declaration of the mistrial stating, "we don't believe that … is the remedy that should be sought given what the court has found at this point in time." However, the trial judge immediately declared a mistrial without allowing any further discussion of the issue.[3]

¶ 15 Because the record lacks support for the declaration of the mistrial, we resolve this uncertainty in favor of defendant. Furthermore, because the trial court failed to adequately explain and support its decision, it is impossible for us to conclude that "manifest necessity" existed for the declaration of a mistrial.

¶ 16 We also reject the City's argument that Judge Nehring's recusal constituted manifest necessity. Although Judge Nehring expressed concern about receiving information beyond the record, the order granting the mistrial was based only on the potential conflict resulting from the relationship between Mr. and Ms. Huber. Therefore, the City's reliance on case law holding that a judge's recusal constitutes manifest

---

**2.** Although Ms. Huber was apparently retained by Ms. Patten *after* charges were filed in this matter, it is quite possible defendant's counsel could have used the information to attack the alleged victim's credibility to the advantage of defendant.

**3.** Although federal rules are not binding on state courts, they are instructive. Federal Rule of Criminal Procedure 26.3 states: "Before ordering a mistrial, the court shall provide an opportunity for the government and for each defendant to comment on the propriety of the order, including whether each party consents or objects to a mistrial, and to suggest any alternatives." Fed. R.Crim.P. 26.3.

necessity is inapposite. Even assuming Judge Atherton was correct—that the declaration of the mistrial was based on Judge Nehring receiving information outside the record—the City's argument still fails.

¶17 The City relies on *State v. Graham*, 91 Wash.App. 663, 960 P.2d 457 (1998), to support its argument that recusal of a judge when a conflict arises in the middle of a trial constitutes manifest necessity. *See Id.* at 459. However, the trial judge in *Graham* specifically stated for the record that he may have a conflict with one of the police officers testifying in the case. *See id.* at 458. Although he did not believe there was an actual conflict, the judge also stated that he was recusing himself from the case under the Code of Judicial Conduct because his impartiality could reasonably be questioned. *See id.* In contrast, the judge in this case did not invoke the Utah Code of Judicial Conduct to justify his recusal nor did he unequivocally state for the record that his impartiality was compromised. Therefore, even assuming the information Judge Nehring received outside the record created some problem, nothing in the record supports the necessity of his recusal. The record also lacks sufficient information about possible judicial prejudice or bias, much less a finding to the effect that manifest necessity existed to justify a mistrial on that basis. Further, there was no discussion with counsel about this possible basis for a mistrial. *Cf. People v. Hicks,* 447 Mich. 819, 528 N.W.2d 136, 146 (1994) (finding manifest necessity and allowing reprosecution where record showed appearance of impropriety and judge explored other alternatives, receiving input from both defendant and prosecutor in declaring mistrial). We therefore find the City's reliance on *Graham* unpersuasive.

## CONCLUSION

¶18 In sum, the trial judge did not adequately support his decision to declare a mistrial with sufficient findings of fact, failed to consider alternatives to declaring a mistrial, and erroneously refused to allow either party a sufficient opportunity to object or discuss other options. Furthermore, the record does not support recusal constituting manifest necessity for a mistrial. Accordingly, we reverse the trial court's denial of defendant's motion to dismiss and vacate the charges against him on the basis of double jeopardy.

¶19 Reversed.

¶20 WE CONCUR: JUDITH M. BILLINGS, Judge, and NORMAN H. JACKSON, Judge.