*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 7**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellee,*
*v.*
AFUHIA MANATAU,
*Defendant and Appellant.*

No. 20100908
Filed March 7, 2014

Third District, Salt Lake
The Honorable Michele M. Christiansen
The Honorable Robin W. Reese
No. 01904368

Attorneys:

Sean D. Reyes, Att'y Gen., Jeanne B. Inouye,
Asst. Att'y Gen., Salt Lake City, for plaintiff

Lori J. Seppi, Salt Lake City, for defendant

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    In this appeal, we address whether the trial court erred by denying defendant Afuhia Manatau's motion to dismiss the charges against him on double jeopardy grounds. We specifically address whether the double jeopardy clause of the Utah Constitution barred Mr. Manatau's retrial when a trial judge declared a mistrial without establishing legal necessity to do so. We conclude that the burden to create a record for and sufficiently justify the mistrial fell on the trial court and the State, not the defendant. We further conclude that legal necessity was not established on the record and hold that Utah's constitutional protections against double jeopardy prohibited Mr. Manatau's retrial.

## BACKGROUND

¶2    On May 24, 2009, Mr. Manatau beat his wife in their apartment and pursued her as she fled to two different apartments

in their neighborhood. At the third apartment, Mr. Manatau threw a baby gate through a window into the residence, spraying shattered glass on the apartment's occupants, and persisted in pounding on the front door until shortly before the police arrived.

¶3 The State charged Mr. Manatau with various crimes, including aggravated burglary, aggravated assault, burglary, criminal mischief, and reckless endangerment. Mr. Manatau's case went to trial on March 2, 2010. Prior to jury selection, bailiffs discovered a pocket knife in the pocket of a suit jacket Mr. Manatau's wife had brought for him to wear in court. Mrs. Manatau claimed she borrowed the suit jacket from her brother and was unaware that he had left a pocket knife he used for Boy Scout activities in the pocket. Because of security concerns caused by this incident, the trial judge excluded Mrs. Manatau from the courtroom for the remainder of the trial.[1] Thereafter the jury was selected, empaneled, and sworn, and the trial proceeded.

¶4 On the second day of trial, after several witnesses had testified and the trial judge had ruled on several objections, Mrs. Manatau's attorney asked the court to allow her to reenter the courtroom to observe the proceedings against her husband. Mrs. Manatau's attorney argued that courtroom security could be maintained if Mrs. Manatau were subjected to a search before entering the courtroom and if a bailiff sat next to her. The State opposed the request, arguing that Mrs. Manatau had attempted to smuggle a knife to her violent husband, was wearing an ankle monitor for unspecified charges against her, and had attempted to intimidate witnesses against her husband. After hearing argument, the judge ruled that Mrs. Manatau could reenter the courtroom if additional security measures were followed. The judge then took a recess.

¶5 Following the recess, the trial judge announced sua sponte that she was recusing herself and declaring a mistrial. The judge explained that during the recess she had had an opportunity to reflect on the knife incident, and had concluded that it was affecting her more than she had previously thought. The judge announced that her prior rulings in the case were not biased, but stated that in anticipation of future rulings, she had decided to recuse herself:

---

[1] Shortly after the knife incident, but before the jury was sworn, Mrs. Manatau formally invoked her privilege not to testify against her husband.

> [I]n an abundance of caution and to avoid any question of either impropriety or biased decision-making on my part, I am actually going to call a mistrial and recuse myself from the case. As you can probably tell, I'm feeling quite emotional about this, and I think just for the benefit . . . of the state, and all of the witnesses in this case, I think it's best that I recuse myself from this case. So I am going to call a mistrial and we'll have the case assigned to a different judge.

¶6    Both defense counsel and the prosecutor objected to the mistrial. Defense counsel objected on double jeopardy grounds. The judge overruled these objections, stating that in a mistrial case, "jeopardy doesn't attach and so we can go forward with a new jury."

¶7    The case was reassigned for retrial under a new judge. At the retrial, Mr. Manatau moved to dismiss the charges against him on the grounds of double jeopardy. Mr. Manatau argued that because jeopardy had attached when the first jury was empaneled, the mistrial acted as an acquittal. The trial court denied this motion, ruling that the mistrial did not act as an acquittal because the mistrial was legally necessary. At the conclusion of the second trial, Mr. Manatau was convicted of aggravated burglary, aggravated assault, burglary, criminal mischief, and four counts of reckless endangerment. Mr. Manatau appealed.

### STANDARD OF REVIEW

¶8    In this case, we review the rulings of two separate trial courts. First, we review the second trial court's (Judge Reese's) ruling that Mr. Manatau's retrial was not barred on double jeopardy grounds. We afford no deference to the trial court's double jeopardy ruling because the trial judge was in "no better position than this court to determine the necessity of a mistrial." *State v. Harris,* 2004 UT 103, ¶ 21, 104 P.3d 1250. Second, we review the initial trial court's (Judge Christiansen's) sua sponte order declaring a mistrial to determine whether the mistrial was legally necessary. If a court articulates on the record a factual basis for its determination that a new trial is legally necessary, we review that court's determination for abuse of discretion. *Id.* ¶ 29. Absent record findings, however, we independently assess whether the mistrial was legally necessary. *Id.* ¶ 30.

## ANALYSIS

### I. UTAH'S DOUBLE JEOPARDY CLAUSE

¶9    In a jury trial, jeopardy attaches when a jury has been sworn and empaneled. *State v. Ambrose,* 598 P.2d 354, 358 (Utah 1979). Declaring a mistrial after jeopardy has attached automatically invokes the double jeopardy clauses of the United States Constitution and the Utah Constitution. U.S. CONST. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); UTAH CONST. art. I, § 12 ("nor shall any person be twice put in jeopardy for the same offense"). The declaration of a mistrial before a verdict is entered, as a general rule, operates as an acquittal. *State v. Harris,* 2004 UT 103, ¶ 24, 104 P.3d 1250; *State v. Whitman,* 74 P.2d 696, 697–98 (Utah 1937).

¶10   Once a mistrial has been declared, a retrial may proceed without offending Utah's constitutional double jeopardy provision only if one of two exceptions applies: (1) the defendant consents to the mistrial or (2) there is "legal necessity" for the mistrial.[2] *Harris,* 2004 UT 103, ¶ 24. If, as in this case, the defendant has not consented to the mistrial legal necessity is established only if a mistrial is the "only reasonable alternative to insure justice under the circumstances." *Ambrose,* 598 P.2d at 358. In order to show that a mistrial is the only reasonable alternative, two elements must be met.

¶11   First, the trial judge has a duty to carefully evaluate the circumstances of the particular case and determine that legal necessity requires the discharge of the jury. *Harris,* 2004 UT 103, ¶ 27; *Whitman,* 74 P.2d at 697–98. As part of that inquiry, the judge must "afford the parties adequate opportunity to object to the declaration of a mistrial." *Harris,* 2004 UT 103, ¶ 27. The judge also must consider possible alternatives to terminating the proceeding and determine that none of the proposed alternatives are reasonable. *Id.*

¶12   While the trial judge must ultimately bear the burden of making the determination that none of the alternatives are reasonable, "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar." *Ambrose*, 598

_____

[2] Mr. Manatau references the double jeopardy provisions of both the federal Constitution and Utah's Constitution in his appellate briefing, but principally relies on case law interpreting the Utah Constitution. Because we find Utah's Double Jeopardy Clause to be dispositive, we confine our analysis to the Utah Constitution.

P.2d at 359 (internal quotation marks omitted). A defendant, however, does not bear a burden to show a mistrial is legally necessary if the defendant objects to the mistrial. As we noted in *Ambrose*, a defendant may often have many "valid personal reasons to prefer going ahead with the trial"; the burden is placed on the trial judge to "avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare." *Id.* at 360 (internal quotation marks omitted).

¶13 Second, the trial court must establish a record of the factual basis for its conclusion that a mistrial is necessary, as well as the reasons why there is no reasonable alternative under the circumstances. *Id.* If a trial court makes these findings on the record, we afford substantial deference to its determination that legal necessity warrants a mistrial. *Harris,* 2004 UT 103, ¶ 29. In the absence of an adequate record, however, the mistrial will operate as an acquittal if we are unable to find a readily apparent factual basis for the mistrial on the face of the record. *Id.* ¶ 30. Additionally, if the trial court fails to articulate why no reasonable alternatives existed, "the mistrial will operate as an acquittal if we find, based on our own independent assessment, that one or more of the proposed alternatives presented to the trial judge was reasonable under the circumstances." *Id.* Absent an adequate record, we resolve uncertainties as to the existence of legal necessity in favor of the defendant. *W. Valley City v. Patten,* 1999 UT App 149, ¶¶ 13, 15, 981 P.2d 420.

¶14 There are sound reasons for strongly encouraging trial judges to consider all of the alternatives before subjecting a defendant to a second trial. The Supreme Court in *United States v. Perez* stated that a judge should dismiss a jury only "under urgent circumstances, and for very plain and obvious causes." 22 U.S. 579, 580 (1824). As we discussed in *Ambrose,* double jeopardy protections are robust rather than "ephemeral" because they protect a defendant not only from being punished twice for the same offense, but also from having to endure another trial. 598 P.2d at 357, 360. There is "strain, embarrassment, anxiety and expense" involved in a criminal trial, and these are concerns that cannot be vindicated once a retrial has commenced and proceeded. *Id.* at 357.

## II. MR. MANATAU'S RETRIAL VIOLATED UTAH'S DOUBLE JEOPARDY CLAUSE

### A. The Trial Court Did Not Consider Alternatives to a Mistrial

¶15 In the present proceeding, there is no question that at the time the trial judge declared a mistrial, jeopardy had attached. The

jury had been sworn and empaneled the previous day. Further, the record is clear that Mr. Manatau did not consent to the retrial; both Mr. Manatau and the State objected to the mistrial. Therefore, only legal necessity could preclude the mistrial from operating as an acquittal.

¶16  Trial judges must fulfill two distinct requirements in order to establish the legal necessity of a mistrial; the court must (1) consider alternatives to a mistrial and determine no reasonable alternative exists and (2) create a record disclosing the factual basis for the court's determinations that a mistrial is legally necessary and that no reasonable alternative exists. *State v. Harris,* 2004 UT 103, ¶¶ 27–28, 104 P.3d 1250. The record here demonstrates that the trial court did not satisfy its first obligation. The trial court did not consider any alternatives to a mistrial, nor did it determine that none existed because the judge mistakenly believed that jeopardy had not attached. As noted above, when defense counsel objected to the mistrial on double jeopardy grounds, the trial judge erroneously stated that "in mistrial case[s], jeopardy doesn't attach and so we can go forward with a new jury." Thus the judge did not apprehend the necessity of considering alternatives to a mistrial.

¶17  In this situation, the State—not the defendant—bore the burden of alerting the trial court to the need for a determination that no reasonable alternatives existed in order to establish the legal necessity of a mistrial. It was in the State's interest to do so because absent such a determination, a mistrial acts as an acquittal. *Harris,* 2004 UT 103, ¶ 27. Defense counsel is not required to assist the State in rendering the case eligible for retrial by either offering alternatives to be considered or, as especially pertinent in this case, alerting the trial judge to a mistake of law. We do not require defense counsel to help pave the way for their clients to be subjected to jeopardy for a second time.

¶18  We therefore conclude that the trial court failed to meet the first requirement to establish that a mistrial was the "only reasonable alternative." *Id.* (internal quotation marks omitted). Because the trial court mistakenly believed that jeopardy had not attached, the court failed to "carefully evaluate all of the circumstances and conclude that legal necessity mandate[d] the discharge of the jury." *Id.* Absent such an analysis, a mistrial acts as an acquittal.

### B. The Trial Court Did Not Create a Record of a Legal Necessity Determination

¶19  The mistrial also acted as an acquittal in this case because the trial court did not satisfy its second obligation to create a record

to support a finding that there was no reasonable alternative to a mistrial. And we cannot say that a mistrial was legally necessary from our independent review of the record.

¶20 Because the trial court mistakenly believed that jeopardy had not attached, it did not make findings supporting a conclusion that a mistrial was legally necessary. The absence of a record, however, does not always require an acquittal. If the trial court does not make explicit findings regarding legal necessity, we independently determine whether "the factual basis for the mistrial is readily apparent from the record" and whether "based on our own independent assessment, . . . one or more of the proposed alternatives presented to the trial judge was reasonable under the circumstances."[3] *Harris,* 2004 UT 103, ¶ 30.

¶21 In this case, the trial judge articulated a factual basis for declaring the mistrial. The judge stated that events on the first day of trial had affected her (presumably emotionally) to the point of causing her to question her impartiality going forward, especially in light of the need to rule on future objections. The judge further clarified that the basis for the mistrial was "the security issues that [had] been raised."

¶22 The trial judge, however, did not consider any alternatives to a mistrial on the record, nor did either party offer any. Thus, unlike *Harris*, where we considered whether alternatives proposed by the defendant were reasonable, we have no record alternatives to a mistrial to consider here. *See id.* ¶¶ 33–38. We therefore must independently determine whether the trial court had any reasonable option to a mistrial, resolving all uncertainties caused by gaps in the record in favor of the defendant. *See W. Valley City v. Patten,* 1999 UT App 149, ¶ 15, 981 P.2d 420 ("Because the record lacks support for the declaration of the mistrial, we resolve this uncertainty in favor of defendant.").

---

[3] We emphasize that requiring a trial court to record specific findings regarding mistrial "is not intended to make trial courts unduly apprehensive of declaring a mistrial." *Harris,* 2004 UT 103, ¶ 29. On the contrary, compliance with this requirement requires appellate courts to afford substantial deference to a trial court's legal necessity determination. *Id.* A decision to call a mistrial is a fact-intensive, circumstance-dependent inquiry, and the trial court has the "superior position to determine whether any proposed alternatives to a mistrial are reasonable in a given situation or whether legal necessity mandates the termination of the proceeding." *Id.*

¶23 We hold that a reasonable alternative did exist. In this case, no prejudicial or improper statements were made by either party in the presence of the jury. *See Ambrose,* 598 P.2d at 356–58. The only potential prejudice at issue was that of the trial judge. And it was a prospective concern only; the judge determined that the court's rulings prior to declaring a mistrial were not tainted by prejudice, and the State does not allege any of the court's rulings were suspect. In these circumstances, it may have been reasonable for the case to have been reassigned to another judge. *See* UTAH R. CRIM. P. 29(a) ("If, by reason of death, sickness, or other disability, the judge before whom a trial has begun is unable to continue with the trial, any other judge of that court or any judge assigned by the presiding officer of the Judicial Council, upon certifying that the judge is familiar with the record of the trial, may, unless otherwise disqualified, proceed with and finish the trial . . . ."). Although we acknowledge that in some situations this alternative may be unreasonable—for example, where no other judge is available to continue the trial within a reasonable amount of time—there is no evidence of any circumstances that would make reassignment of the case to another judge unreasonable here. Absent findings that reassignment was not feasible, we must resolve any uncertainty caused by this gap in the record in favor of the defendant. Thus, the insufficiency of the record in this case precludes this court from making an independent determination that the mistrial was legally necessary.

¶24 In making this determination, we acknowledge the reprehensible nature of the defendant's conduct.[4] However, because of the insufficiency of the record we are unable to conclude the mistrial was legally necessary, and constitutional requirements preclude a second trial under such circumstances. We therefore find that the denial of Mr. Manatau's motion to dismiss on double jeopardy grounds was erroneous, and reverse his convictions.

———————

[4] At trial, Mr. Manatau did not dispute the essential facts of the case. He only argued that the State had overcharged him.