2024 UT App 44

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RICHARD SCOTT MITTON,
Appellant.

Opinion
No. 20221076-CA
Filed April 4, 2024

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
The Honorable Spencer D. Walsh
No. 211100057

Wayne K. Caldwell, Attorney for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1 At the end of the first day of Richard Scott Mitton's jury trial, the judge realized he was distantly related by marriage to the alleged victim's wife and notified the parties, setting in motion a rapid sequence of events. Later that evening, Mitton filed a motion to disqualify the judge. By 9:30 the next morning, the presiding judge had granted the motion, assigned a new judge to the case, and declared a mistrial. After the motion was granted, the now-disqualified judge discharged the jury and then notified the parties of what had transpired that morning.

¶2 The next day, the State filed an amended information, adding a more serious charge. Mitton filed a motion to dismiss,

arguing that the amended information subjected him to double jeopardy in violation of his constitutional rights. The new judge denied Mitton's motion to dismiss under the legal necessity exception to double jeopardy, and we granted Mitton's petition to appeal from that interlocutory order. For the reasons set forth below, we reverse the denial of Mitton's motion to dismiss and remand the matter for dismissal of the charges against him with prejudice on the basis of double jeopardy.

## BACKGROUND[1]

¶3  Mitton and Brad[2] became brothers-in-law when Mitton married Brad's sister (Sister). In December 2020, Mitton and Brad got into an altercation at the home of Brad and Sister's aging father after the father had been placed in a care facility, leaving his house unoccupied. Brad's wife (Wife) pulled out her phone to call the police, but Sister grabbed it and threw it. Wife eventually called 911 while Mitton was "beating on [Brad]." When Brad fell to the floor, Mitton kicked him "in the ear several times and then he started choking him" to the point that Brad's "eyes rolled back into his head." Police and emergency personnel soon arrived and began treating Brad. Brad suffered multiple injuries: bleeding in his eyes and brain; a concussion; bruised vocal cords; hearing and memory loss; swelling in his face and right ear; blurry vision; and back, head, jaw, and neck pain.

¶4  The State charged Mitton with two counts of aggravated assault (domestic violence), both third-degree felonies.

---

1. "Because this case comes to us on an interlocutory appeal, the allegations we recite have not been tried and therefore remain allegations." *State v. Stewart*, 2018 UT 24, ¶ 2 n.1, 438 P.3d 515. "On interlocutory review, we recount the facts as alleged and in a light most favorable to the ruling below." *Id.* (cleaned up).

2. A pseudonym.

Approximately one month before trial, the State disclosed its witness list, which included Wife and Sister.

¶5     The jury trial began in Brigham City, Utah, on July 20, 2022, with Judge Maynard presiding. Before testimony began, Mitton invoked the exclusionary rule, and Judge Maynard excused Wife and Sister from the courtroom. Brad testified about the family and the circumstances leading up to the incident, and the first day of trial ended with Brad still on direct examination.

¶6     At the end of that first day, Judge Maynard spoke with the parties outside the presence of the jury, informing them that he recognized Wife when she left the courtroom, and he realized he has a familial connection to her: Wife's mother is a sister of Judge Maynard's wife's grandmother. Judge Maynard explained he had never met Brad and he "didn't recognize [his] last name." He went on to say, "I don't believe I have any conflict that creates any concerns for me, but I wanted to disclose that to counsel, give you an opportunity to discuss that or think about that." Judge Maynard did not recuse himself.

¶7     Just before nine o'clock that evening, Mitton filed a motion to disqualify, arguing that "Judge Maynard should be disqualified and the case re-assigned." Mitton argued that although "a relationship to the fifth degree of affinity is not mandatorily prohibited by Utah Code [section] 78A-2-222, the degree of relationship is not so distinct as to remedy the appearance of bias."[3] He also noted that Judge Maynard's disclosure that he recognized Wife as a family member "raises issues concerning the public perception of impartiality."

---

3. "Except by consent of all parties, a justice [or] judge . . . may not sit or act in any action or proceeding . . . when [that judge] is related to either party by consanguinity or affinity within the third degree . . . ." Utah Code § 78A-2-222(1).

¶8    By eight o'clock the next morning, the parties were back in the courtroom to resume the trial. But the trial never resumed. Judge Maynard informed the parties that he could not take any action regarding the trial until the judge reviewing the motion to disqualify ruled on it. Meanwhile, Judge Cannell—the presiding judge of the district—had been reviewing Mitton's motion to disqualify from his office in Logan, Utah. By 9:30 that morning, Judge Cannell had issued a three-sentence order of recusal and reassignment (the Initial Order) that read in its entirety, "[Mitton's] Motion to Disqualify is granted. This case is now transferred to Judge Spencer D. Walsh for all future court proceedings. The jury trial is vacated."[4] Judge Maynard—after having been disqualified—informed the parties, who were still waiting in the courtroom, that when Judge Cannell signed the Initial Order that removed him from the case, "I, prior to coming in here, went back to visit with the jury and I've excused them, told them that they are free to leave, that they are no longer paneled in this case."[5]

¶9    The following day, the State filed an amended information based on the same alleged conduct but increased one of the counts to a second-degree felony. The State also filed a motion for an

---

4. We note that the term "vacated" was not the correct terminology. A jury is *discharged* when a mistrial is declared. *See, e.g.*, *State v. Harris*, 2004 UT 103, ¶ 39, 104 P.3d 1250 (reversing denial of motion to dismiss on grounds of double jeopardy after judge declared a mistrial and discharged the jury). A *conviction* is vacated if an appeal is successful. *See e.g.*, *State v. Lee*, 2024 UT App 2, ¶ 19, 542 P.3d 974 (vacating convictions and remanding the case for a new trial). We encourage district courts to use the correct terminology to avoid any confusion that may result.

5. The record does not reflect whether Judge Cannell instructed Judge Maynard to speak to the jury or if he did so of his own accord.

expedited jury trial to "mitigate" the "due process violations" caused by the State not having an opportunity to respond to Mitton's motion to disqualify or to be heard on the issue of a mistrial before the jury was excused.

¶10    Six days after the Initial Order was issued, on July 27, 2022, Judge Cannell filed an amended order of recusal (the First Amended Order), noting it was "intended to replace" the Initial Order and "confirm its ruling." Judge Cannell stated that when Mitton filed his motion to disqualify, Judge Cannell had "acted as promptly as possible" under rule 29 of the Utah Rules of Criminal Procedure and although he had found no impropriety with Judge Maynard's actions, he had decided "removal and reassignment" were both "appropriate and necessary" to "avoid any appearance of impropriety and to promote the public's confidence in the proceedings and ultimate outcome." Judge Cannell recognized "the frustration of everyone involved with the wasted expenditure of resources, loss of time, impacts on the parties and the alleged victim, costs to the jurors and to the system, etc., resulting from the trial delay." He explained it "was a very difficult decision to make knowing the potential impacts on everyone involved." The First Amended Order also mentioned Judge Walsh's calendar for the first time, stating the hope that "the trial may be expedited according to Judge Walsh's determination and calendar requirements." And finally, the First Amended Order reiterated that the Initial Order had granted Mitton's motion to disqualify, assigned the case to Judge Walsh, and "vacated" the jury trial.

¶11    On September 1, 2022, Mitton filed a motion to dismiss the amended information with prejudice, arguing that the discharge of a jury operated as an acquittal. Mitton argued the State was prohibited from pursuing charges against him by his constitutional protection against double jeopardy and Utah's single criminal episode statute. *See generally* Utah Code §§ 76-1-401 to -405. And because the jury was discharged without

Mitton's consent and without adequate findings, Mitton argued that the exceptions to double jeopardy should not apply.

¶12    At the hearing on the motion on October 4, 2022, Mitton posited alternatives that he asserted should have been considered before declaring a mistrial, such as (1) letting the jury go home while an alternate judge was found, (2) bringing Judge Walsh—who sits in Logan but also "sits often in Brigham City"—"up to speed" and having him preside over the trial with the same jury, or (3) releasing the jury for a longer period while keeping them empaneled. Judge Walsh took the motion under advisement and on November 17, he scheduled a hearing for November 30 to issue his decision orally. On November 21, however, Judge Walsh notified the parties that the hearing was cancelled and he would issue a written decision instead.

¶13    The next day, Judge Cannell issued another amended order of recusal and reassignment (the Second Amended Order). He stated the Second Amended Order did not replace the First Amended Order but simply "supplement[ed]" it with "further information regarding [the] decision making process to replace the assigned trial judge, vacate the jury trial and excuse the jury, necessarily resulting in a mistrial." Specifically, Judge Cannell stated legal necessity existed to declare a mistrial due to "calendaring constraints" because there "was no practical way for Judge Walsh to drop his regularly scheduled calendar and make himself immediately available for trial." Judge Cannell stated that after reviewing Judge Walsh's availability, he "determined it would be several days, if not several weeks or months, before the retrial could proceed." The order concluded with the observation that "there are no specific rules or case law aiding the reviewing judge to make real time determinations both as to removal of a judge and what to do about a seated jury mid-trial" and the hope that "such lack of clarity can be corrected in the near future so all parties may likewise have confidence in the judiciary and its processes."

¶14    On December 1, 2022, Judge Walsh denied Mitton's motion to dismiss, ruling that retrial may proceed because, although Mitton did not consent to a mistrial, legal necessity was established when "Judge Cannell considered alternatives to a mistrial and determined that no reasonable alternative existed." The court relied solely on the Second Amended Order for these findings.

¶15    Mitton filed a petition to appeal from that interlocutory order, which we granted.

ISSUE AND STANDARD OF REVIEW

¶16    Mitton contends the trial court erred in denying his motion to dismiss on double jeopardy grounds.[6] Typically, a "trial court's decision to grant or deny a mistrial will not be disturbed on appeal absent an abuse of discretion," but because the newly assigned judge reviewing the motion to dismiss "was in no better position than this court to determine the necessity of a mistrial, we review [his] denial of defendant's motion to dismiss" for correctness. *West Valley City v. Patten*, 1999 UT App 149, ¶ 7, 981 P.2d 420.

ANALYSIS

¶17    Mitton claims that the double jeopardy clause of the Utah Constitution bars his retrial. He argues that Judge Walsh erred in denying his motion to dismiss because Judge Cannell declared a

---

6. Mitton also challenges the denial of his motion to dismiss under Utah's single criminal episode statute and argues Judge Cannell erred by failing to make the required findings on the record when he declared a mistrial. But we need not reach these issues because we conclude that double jeopardy prohibits the re-prosecution of Mitton.

mistrial without properly establishing legal necessity to do so. We agree.

## I. Utah's Double Jeopardy Clause

¶18 In a jury trial, "jeopardy attaches when a jury has been sworn and empaneled." *State v. Manatau*, 2014 UT 7, ¶ 9, 322 P.3d 739; *see also id.* ¶ 15 (declaring "there [was] no question" that "jeopardy had attached" when the judge declared a mistrial after the jury "had been sworn and empaneled the previous day"). When a mistrial is declared after jeopardy has attached, "the double jeopardy clauses of the United States Constitution and the Utah Constitution" are "automatically invoke[d]." *Id.* ¶ 9. *See generally* U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Utah Const. art. I, § 12 ("nor shall any person be twice put in jeopardy for the same offense"). Thus, the "declaration of a mistrial before a verdict is entered, as a general rule, operates as an acquittal." *Manatau*, 2014 UT 7, ¶ 9.

¶19 For the State to retry the defendant after a mistrial without violating Utah's constitutional double jeopardy provision, one of two exceptions must apply: "(1) the defendant consents to the discharge of the jury, or (2) legal necessity requires the discharge in the interest of justice." *State v. Harris*, 2004 UT 103, ¶ 24, 104 P.3d 1250 (cleaned up). It is undisputed that Mitton did not consent to the discharge of the jury. We thus turn to the legal necessity exception, which applies only in cases where a trial court "determines, after careful inquiry, that discharging the jury is the only reasonable alternative to insure justice under the circumstances." *Id.* ¶ 26 (cleaned up).

¶20 The legal necessity exception to double jeopardy applies only when two elements are met. "First, the trial judge has a duty to carefully evaluate the circumstances of the particular case and determine that legal necessity requires the discharge of the jury." *Manatau*, 2014 UT 7, ¶ 11. As part of this inquiry, the judge "must

afford the parties adequate opportunity to object" and must "consider possible alternatives to terminating the proceeding." *Id.* (cleaned up). Second, the judge "must establish a record of the factual basis for its conclusion that a mistrial is necessary, as well as the reasons why there is no reasonable alternative under the circumstances." *Id.* ¶ 13.

¶21 Here, neither Mitton nor the State were given an "adequate opportunity to object" to the discharge of the jury. *See id.* ¶ 11 (cleaned up). Indeed, the parties were not given any opportunity at all—they were simply notified after the fact that the jury had been discharged.[7] Thus, this part of the first element of the legal necessity exception to double jeopardy was not met. Absent this element, "a mistrial acts as an acquittal." *Id.* ¶ 18. Therefore, for this reason alone, the State cannot retry Mitton without violating his constitutional protections against double jeopardy.

## II. Procedural Guidance

¶22 We take this opportunity to provide clarification of the proper procedure in these circumstances, in part to address Judge

---

7. At oral argument, we expressed doubt that the jury was, in fact, properly discharged because Judge Maynard was the one who did so, and he had already been disqualified from the case by the time he "excused the [jury], told them that they [were] free to leave, [and said] that they [were] no longer paneled in this case." If a judge who may be disqualified cannot take any action in a case, *see State v. Gavette*, 2019 UT App 73, ¶ 12, 442 P.3d 1243 ("[O]nce a disqualification motion is filed, the trial judge lacks authority to proceed until the motion is decided and any action taken by the court in the intervening time is void."), then it follows that a judge who actually is disqualified cannot either. Ultimately, we need not grapple with this issue because regardless of whether the jury was properly discharged, a mistrial was declared after jeopardy attached and the legal necessity exception was not met.

Cannell's statement in the Second Amended Order that he hoped the "lack of clarity" on what judges should do when faced with a motion to disqualify a judge during a criminal trial "can be corrected in the near future so all parties may likewise have confidence in the judiciary and its processes."

¶23    There was understandably some urgency in dealing with the disqualification of the trial judge in the middle of a jury trial, and we appreciate Judge Cannell's efforts to quickly address the issue. We also recognize that it may not be practical to expect that a new trial judge will be readily available to step in for a disqualified judge in a similar situation, particularly in those districts with geographically dispersed judges. Therefore, we offer the following guidance on the proper procedure for trial courts to follow when addressing a motion to disqualify a judge during a criminal trial.

A.    The Initial Judge

¶24    "When faced with a motion to disqualify, a judge has only two options: grant the motion or certify the motion to a reviewing judge for decision." *State v. Gavette*, 2019 UT App 73, ¶ 1, 442 P.3d 1243; *see also* Utah R. Crim. P. 29(b)(2)(A) ("The judge against whom the motion and affidavit are directed shall, without further hearing, enter an order granting the motion or certifying the motion and affidavit to a reviewing judge. The judge shall take no further action in the case until the motion is decided."). This rule "presents a trial judge with a binary choice" of recusing herself or certifying the motion to another judge. *See Gavette*, 2019 UT App 73, ¶ 8.

¶25    Here, Judge Maynard chose the second option by sending the motion to disqualify to Judge Cannell. Judge Maynard informed the parties that because he did not recuse himself, he could not take any action regarding the trial until the judge reviewing the motion to disqualify ruled on it. Judge Maynard was correct that he could not take any action in the trial while

Judge Cannell was reviewing the motion to disqualify. And once Judge Cannell granted the motion, Judge Maynard could not take any action whatsoever, so he had no authority to discharge the jury in a trial from which he had been disqualified. We acknowledge that Judge Maynard was in Brigham City and Judge Cannell and Judge Walsh were both in Logan. But as we explain below, it was incumbent upon Judge Cannell or Judge Walsh (or another non-disqualified judge) to hold a hearing to determine—with input from the parties—whether to declare a mistrial and to communicate with the jury.

B.     The Reviewing Judge

¶26     Rule 29(b) of the Utah Rules of Criminal Procedure articulates the steps the reviewing judge must take when considering a motion to disqualify. "If the reviewing judge finds that the motion" is timely and meritorious, "the reviewing judge shall assign another judge to the action or hearing or request the presiding judge to do so." Utah R. Crim. P. 29(b)(2)(B). Here, Judge Cannell was both the reviewing and the presiding judge.

¶27     We recognize that Judge Cannell was dealing with exigent circumstances—what to do with a criminal jury trial that no longer had a judge. We instruct the reviewing judge in these circumstances to assign the case to a judge who can immediately deal with the issue of whether to declare a mistrial or to temporarily assign the case to herself to make that determination. *See id*. (stating that "the reviewing judge shall assign another judge to the action *or hearing*" (emphasis added)).

C.     The Assigned Judge

¶28     A judge who is assigned to a case with an ongoing criminal jury trial where the initial judge has been disqualified should first address the issue of whether a mistrial should be declared. Here, Judge Walsh did not hold a hearing on whether to declare a mistrial and discharge the jury because Judge Cannell had already

declared a mistrial and Judge Maynard had already excused the jurors before Judge Walsh had an opportunity to hold a hearing on the matter. As a result, Judge Walsh could not "afford the parties adequate opportunity to object to the declaration of a mistrial." *See State v. Manatau*, 2014 UT 7, ¶ 11, 322 P.3d 739 (cleaned up).

¶29     The assigned judge should be given the opportunity to hold a hearing on these issues of immediate concern, regardless of whether that judge's calendaring constraints would prevent her from immediately continuing the trial should it be determined that it will proceed.[8] Once the issue of a mistrial has been resolved, the assigned judge may remain on the case or it may be reassigned to a judge who can preside over the trial in a reasonable timeframe (assuming it moves forward).

CONCLUSION

¶30     Utah's constitutional protections against double jeopardy prohibit Mitton's retrial because the elements of legal necessity were not established where the court failed to give the parties an opportunity to object to the declaration of a mistrial. Thus, we reverse the denial of Mitton's motion to dismiss and remand the matter for dismissal of the charges against him with prejudice on double jeopardy grounds.

———————

8. We leave to the discretion of the assigned judge the specific manner in which to hold a hearing. But we note that it could be conducted via telephonic or virtual means should an in-person hearing be impractical.